## JARED A. AYRES *vs.* HENRY FRENCH.

Trover will lie for shares of manufacturing stock. (One judge dissenting.)

A count in a declaration·alleged that the defendant, intending to defraud the plaintiff of a quantity of manufacturing stock owned by him, induced him to assume certain pecuniary obligations by promising to endorse his notes therefor when needed, without charge and without security, not intending to perform his promise, and that when the plaintiff had assumed the obligations and needed the endorsements, the defendant refused to endorse unless the plaintiff's stock was transferred to him as security, and that the plaintiff under the necessity transferred to him the stock to be held as such security, and that the plaintiff ultimately paid all the notes so endorsed and saved the defendant wholly harmless, and afterwards demanded of him a re-transfer of the whole of the stock, but that the defendant returned but a part of the stock and retained and refused to return seventy-five shares of the same, claiming them, contrary to his promise, as compensation for his endorsements, and converted them to his own use. Held to be a good count in tort and to set out an actionable fraud.

And held that the count contained all the essentials of a count in trover.

A count alleging that the plaintiff transferred certain shares of stock to the defendant as collateral security for endorsements made by the defendant for him, and that it was the duty of the defendant to hold said shares for that purpose and to re-transfer them when relieved of his liability on the endorsements, that the plaintiff had paid up all the paper so endorsed and had demanded a re-transfer of the stock from the defendant, but that the defendant had refused to re-transfer them and had converted them to his own use, is a count in tort.

TROVER, for a quantity of manufacturing stock, with counts in case for a fraudulent procurement and conversion of the stock and for a tortious conversion of stock received by the defendant as collateral security; brought to the Superior Court in Hartford County.

The count in trover was in the ordinary form, describing the stock as lost by the plaintiff and found by the defendant. The second count was as follows: That on or about the 1st day of November, 1866, the plaintiff and defendant were each owners of a large amount of the capital stock of the National Screw Company, a corporation located in said Hartford; that its capital stock was five hundred thousand dollars, divided into shares of one hundred dollars each; that a portion of the stock so owned by the plaintiff was full paid stock and a portion was stock on which only twenty dollars per share had been paid in; that the defendant and the other stockholders also held large quantities of stock on which only twenty dollars per share had been paid, the remaining eighty dollars per share being payable whenever called for by the directors; that said corporation was also indebted to the plaintiff in the sum of sixteen thousand dollars; that the plaintiff and defendant were both direcors of the said corporation; that said corporation had been but recently organized, and the plaintiff and defendant were engaged with the other directors and stockholders in endeavoring to get the same into successful operation; that the plaintiff had invested therein nearly all his available means and was indebted to other parties for borrowed money besides his liability to said corporation on the stock so held by him on which only twenty per cent. had been paid, and the

plaintiff relied upon said indebtedness of said corporation to himself to enable him to meet his said liabilities, all which was well known to the defendant; that the defendant was possessed of a large estate and good credit, and prior to said first day of November, 1866, had been accustomed to indorse and had indorsed the notes of the plaintiff, without any compensation, to enable the plaintiff to raise money to meet his obligations from time to time, and there was no other party on whom the plaintiff could rely to aid him in raising money, and the plaintiff had no other means to enable him to meet his said liabilities other than his said stock in said corpora-tion and said indebtedness so due to him, as the defendant well knew; that on or about the 1st day of November, 1866, the defendant and other directors of said corporation, for the purpose of increasing its working capital, proposed to the plaintiff that he should release to said corporation its indebtedness to him, and that in consideration thereof the defendant and the other stockholders of said corporation should each pay to the plaintiff such proportion of said indebtedness as the stock of each stockholder bore to the whole stock of said corporation, and that such payment should be made by each stockholder transferring to the plaintiff such number of shares of the stock of said corporation on which twenty dollars per share had been paid in as should be necessary for that purpose, and that such stock should be received by the plaintiff as of the value of twenty dollars per share in payment as aforesaid, and that the plaintiff should assume the liability to pay the remaining eighty dollars per share on said stock when the same should be called for by the directors; that the plaintiff refused to accept said proposition for the reason that by so doing he would deprive himself of the means to meet his outstanding obligations as they fell due, and that to assume such additional liability to said corporation would utterly destroy his credit and result in his financial ruin; that the defendant, contriving and intending to injure and defraud the plaintiff, in order to induce the plaintiff to accede to said proposition and release his said claim against said company and take in payment therefor

stock as aforesaid from the defendant and the other stock holders, then proposed to and agreed with the plaintiff that if he would accede to said proposition, he, the defendant, would indorse the notes of the plaintiff so far as should be necessary to enable him to raise the money necessary to meet his liabilities and until such time as the plaintiff should be able by the sale of stock or otherwise to relieve himself from embarrassment, and the plaintiff relying upon said promise and agreement, and induced thereby and by the solicitation of the defendant, finally assented to said proposition, and thereupon released his said claim to said corporation, and the defendant and the other stockholders thereupon transferred to the plaintiff a large amount of said stock on which twenty dollars per share had been paid, and thereupon the plaintiff became liable to pay into said corporation the remaining eighty dollars on each share of said stock whenever the same should be called for by the directors. And that afterwards, to wit, on or about the 15th day of November, 1866, the plaintiff found it necessary for him to raise about the sum of ten thousand dollars in order to meet his obligations as aforesaid, and thereupon called upon the defendant to indorse his notes to that amount, in accordance with said agreement of the defendant, and that thereupon the defendant, with like intent to injure and defraud the plaintiff, and to obtain possession of the stock of said company belonging to the plaintiff, with intent to cheat and defraud the plaintiff out of the same, disregarding his said promise and agreement, wrongfully and fraudulently refused to indorse said notes unless the plaintiff would transfer to the defendant one hundred and ninety-five shares of full paid stock of said company then owned by the plaintiff, and the plaintiff was compelled to transfer, and then and there did transfer, to the defendant, said one hundred and ninety-five shares of said stock as collateral security for such endorsements, and thereupon the defendant assented to endorse the notes of the plaintiff to the amount of ten thousand dollars, for the period of six months, and did so endorse for the plaintiff. And at the end of said six months, viz., on or about the 15th day of

May, 1867, the plaintiff had paid and taken up about thirty-five hundred dollars of said indorsed paper, but found it necessary to continue or renew the balance of said notes, to wit, about six thousand five hundred dollars, for a longer period, and the defendant then refused to indorse the plaintiff's notes to renew said balance unless the plaintiff would transfer to the defendant twenty more shares of full paid stock of said company, and the plaintiff was compelled in order to avoid having his notes protested to transfer, and did transfer, to the defendant, twenty more shares of said full paid stock as further security for such indorsements, and the defendant did thereafter indorse said notes for the accommodation of the plaintiff, and that afterwards the plaintiff paid and took up all said notes so indorsed by the defendant, and the defendant was subjected to no loss or expense on account of said indorsements, and afterwards, to wit, on or about the 1st day of January, 1868, the plaintiff demanded of the defendant a re-conveyance of said shares of stock so transferred by him to the defendant; that the defendant thereupon transferred to the plaintiff one hundred and forty-five shares of said stock, but refused to transfer the rest of said stock, claiming to retain the same as compensation for so indorsing said notes for the plaintiff. And the plaintiff says that the defendant was not entitled to any such compensation from the plaintiff, but said claim of the defendant was in violation of the agreement aforesaid between the plaintiff and defendant, and was fraudulent, oppressive, and extortionate. And the plaintiff says that the whole number of said shares which the plaintiff was compelled to place in the defendant's hands was two hundred and fifteen shares of full paid stock of the par value of twenty-one thousand five hundred dollars, and the whole number which the defendant transferred back to the plaintiff or to his order was one hundred and forty-five shares, which were so transferred back on and before January 9th, 1869, but the defendant, contriving and intending to cheat and defraud the plaintiff out of his just rights in said property, did refuse and ever since has refused to deliver up to the plaintiff the remaining seventy-

five shares, of the par value of seven thousand five hundred dollars. And the plaintiff says that the defendant obtained possession of his said property by falsely and fraudulently representing to him that he would indorse his paper without charge, and by means of said representations inducing him to take said stock on which twenty dollars per share had been paid instead of the money so due him from said company, and to take upon himself the obligations and liabilities thereby imposed upon the plaintiff, the defendant well knowing that the plaintiff could not carry or discharge said liabilities and obligations without receiving said money or without the aid of the defendant's indorsements; and the plaintiff says that the defendant has suffered no loss or damage by reason of his said indorsements, and has given the plaintiff no value for said seventy-five shares, which are worth about eighteen thousand dollars, but the defendant has fraudulently converted and disposed of the same to his own use, and the plaintiff has wholly lost the same.

The third count was as follows:

That on or about the 1st day of January, 1867, the plaintiff had applied to the defendant to indorse the plaintiff's notes to the amount of ten thousand dollars; that the defendant consented to make such indorsement for the plaintiff, but required of the plaintiff to transfer to the defendant certain shares of the stock of the National Screw Company, of said Hartford, as collateral security for such indorsements; and that on or about said day the defendant did indorse the plaintiff's paper to the amount of ten thousand dollars; and that it was agreed between the plaintiff and the defendant that the plaintiff should transfer to and deposit with the defendant as collateral security, in order to save the defendant harmless from loss or damage by reason of his said indorsements, two hundred and fifteen shares of the capital stock of the said National Screw Company; and that accordingly the plaintiff did transfer to the defendant and deposit with him said two hundred and fifteen shares as collateral security as aforesaid; and that thereupon it became and was the duty of the defendant to safely hold and keep said shares

of stock exclusively as collateral security against any loss or damage which the defendant might suffer by reason of said indorsements, and whenever all said notes should be fully paid by the plaintiff without loss or damage to the defendant, to re-deliver and transfer said shares back to the plaintiff. And the plaintiff says that afterward, on or about the 1st day of January, 1869, the plaintiff fully paid all the said notes which the defendant nad indorsed for the plaintiff as aforesaid and took up said notes into his possession, and that the defendant was thereby relieved from all liability to pay any of said notes, and has never been subjected to any loss or damage by reason ot his said indorsements; whereby it became and was the duty ot the defendant to re-deliver and transfer back to the plaintiff all said shares of stock; but the defendant, not regarding his duty in that behalf, hath at all times ever since neglected and refused, and still does neglect and refuse to restore all said stock to the plaintiff, though thereto often requested and demanded, particularly on the 1st day of June, 1873; but on the contrary has sold or otherwise disposed of seventy-five shares of said stock of the value of about eighteen thousand dollars, so that the plaintiff has lost and been wholly deprived of the same, and the defendant, contriving and intending to injure the plaintiff, hath fraudulently and wrongfully converted and disposed of said seventy-five shares to his own use; all which is to the plaintiff's damage the sum of twenty thousand dollars, to recover which with costs this suit is brought.

The defendant demurred to all the counts of the declaration, and the questions arising on the demurrer were reserved for the advice of this court.

*Perkins* and *Parsons*, in support of the demurrer.

1. Trover will not lie for shares of stock. It lies only for tangible property, capable of being identified, and taken into actual possession. 1 Chitty Pl., 147; *Sewall* v. *Lancaster Bank*, 17 Serg. & R., 285; *Slaymaker* v. *Bank of Gettysburg*, 10 Penn. S. R., 373; *Arnold* v. *Ruggles*, 1 R. Isl., 165; *Denton* v. *Livingston*, 9 Johns., 96; *Tucker* v. *Jewett*, 32 Conn., 563; *Dawson* v. *Rishworth*, 1 Barn. & Adol., 574.

2. The second count is bad as a count in tort. It discloses no fraudulent misrepresentation of facts. *Corbett* v. *Packington*, 6 Barn. & Cress., 268; 1 Hilliard on Torts, ch. 1, § 3; *Orton* v. *Butler*, 1 Dow. & Ryl., 290; Sedgw. on Damages, 61. No statement of intention, no mere promise, can be in the legal sense a misrepresentation or deceit. Kerr on Frauds, (Bump's Am. ed.,) 88; *Vernon* v. *Keys*, 12 East, 637; *Hemmingway* v. *Hamilton*, 4 Mees. & Wels., 122; *Bold* v. *Hutchinson*, 5 DeG. M. & G., 558; *Jorden* v. *Money*, 5 Clark's House of Lords Cas., 185; *Smith* v. *Richards*, 13 Peters, 38; *Fouty* v. *Fouty*, 34 Ind., 433; *Commonwealth* v. *Drew*, 19 Pick., 179; *State* v. *Magee*, 11 Ind., 154; *Gray* v. *Palmer*, 2 Rob., 500.

3. The third count is not a count in tort. It rests on an alleged *duty* of the defendant to re-deliver the stock. But the duty of fulfilling covenants, paying debts, or performing express agreements, when violated, is not a tort in law. It is further to be noticed that this count sets out a contract. "It was agreed between the plaintiff and defendant," that the plaintiff should deposit certain stock as " collateral security," and the declaration proceeds to define what undertaking is implied on the part of the receiver of property as collateral security. It is to return the property when the necessity for security ceases. This duty the bailee should fulfil, as he should perform all other contracts, but it is no different or higher duty than to pay his debts.

*A. P. Hyde* and *Stanton*, contra.

PARK, C. J. The objection taken to the sufficiency of the first count is founded upon the idea that trover will lie only for property that is tangible and that will admit of being taken into actual possession. This claim is undoubtedly supported by the older authorities. A majority of the court however are of opinion that at the present time, when the action of trover is diverted from its original object of recovering the value of goods lost by the plaintiff and found by the defendant, and all the allegations with respect to such loss and finding are merely formal and unmeaning, there is

no good reason for keeping up a distinction that arose wholly from that original peculiarity of the action, and therefore hold that trover will lie for shares of stock as well as for other kinds of personal property. There is really no difference in any important respect between this and other kinds of personal property. A man purchases a share of stock and pays one hundred dollars for it. He afterwards purchases a horse, and pays the same price. The one was bought in the market as readily as the other and can be sold and delivered as readily. The one can be pledged as collateral security as easily as the other; as easily attached to secure a debt; and its value as easily estimated. The one enriches a man as much as the other, and fills as important a place in the inventory of his estate. It is considered personal property of as substantial value as the other, both in law and in the transactions of men. It is so regarded by our statutes. Gen. Statutes, tit. 7, secs. 250, 408, 452. It would be as great a moral wrong for a man to convert the one to his own use, when it was given in pledge, and the purposes for which it was given were satisfied, as it would be the other, and we think it ought to be as great a legal wrong. But it is said that, in order to maintain this action, a party must have the right to the immediate actual possession of the thing for which he seeks in trover to recover the value. He must undoubtedly have the immediate right to the thing itself, or else he would not have the right to recover its value *in presenti*, any more than a man would have the right to recover on a note which is not yet due. If he has not this right, the conversion of the thing has not yet done the plaintiff any harm. But what matters it whether or not the thing itself is capable of being taken in hand and carried away, so long as it is personal property of as substantial value as any other, and in no case can the thing itself be recovered in this form of action, but only its value. There was force in the claim originally, when trover was confined to property lost. From the nature of the action it could not then lie unless the property was tangible. The fiction of lost property is still retained in declarations of this kind, but the allegation has long since

ceased to be substantial, and there is no longer any reason for requiring that the property should be tangible. The truth is that, when the allegation of lost property became a fiction by the extension of the action to cases not originally embraced within it, the courts carried the original characteristics of the action along with it into its new relations, without stopping to enquire whether all of them were still important. This is the reason why authority can now be found in support of the necessity of a tangible character to the subjects of the action. But, for a long time this once essential requisite has been substantially disregarded in many cases. For many years it has been held that trover is the proper remedy to recover the value of things represented by valuable papers, such as certificates of stock, promissory notes, and other papers of value when unlawfully withheld. 1 Swift's Digest, 534; *Amory* v. *Flyn*, 10 Johns., 102; *Tucker* v. *Jewett*, 32 Conn., 563. If a certificate of stock is unlawfully retained when demanded, what is presumed to have been converted? The certificate has no intrinsic value disconnected from the stock it represents. No one would say that the paper alone had been converted—that the conversion of the paper constitutes the entire wrong. The real act done in such cases is precisely the same as that done here, no more, no less, and to say that trover will lie in one case and not in the other is to make a distinction where in reality there is no difference. Conversion is the gist of the action of trover. Everywhere it is so held. 1 Swift's Digest, 533. The stock in both cases was converted; and we think that, in these days when the tendency of courts is to do away with technicalities not based upon reason, a technical distinction of this character should no longer be sustained.

Again, all the elementary books declare that trover lies to recover the value of goods and personal chattels whenever they have been unlawfully converted. Now it was holden in the case of *North* v. *Forest*, 15 Conn., 400, that shares of stock were goods, wares and merchandise, within the provisions of the statute of frauds, which declares "that no contract for the sale of any goods, wares and merchandise,

for the price of thirty-five dollars or upwards, shall be allowed to be good, unless, &c." The court say :—" In consequence of the great increase of incorporations and the amount of capital invested in them,: the stock of such companies has become a large and valuable portion of the personal estate of our citizens. Contracts for the sale of such property are almost daily made, and often to a very large amount. Such contracts fall clearly within the mischiefs which the legislature by the statute intended to remedy. There is as much danger of· fraud and perjury in the parol proof of such contracts as in any other." And it might be added that the unlawful conversion of such property being as great a wrong as the like conversion of other kinds of personal property, the party who is guilty of it should be equally regarded as a wrong doer and treated accordingly.

The court in the case referred to show a disposition to treat shares of stock like other kinds of personal property ; ånd certainly, if they are treated as goods, wares and merchandise, in order that fraud may be prevented, they should be treated as goods, wares and merchandise that wrong may be redressed. The doctrine of this case is sustained by the court in Massachusetts in the case of *Tisdale* v. *Harris*, 20 Pick., 9, and by recent cases in England. 3 Stark. Ev., 352.

But there are cases bearing directly upon this question. *Maryland Fire Ins. Co.* v. *Dalrymple*, 25 Maryl., 242 ; *Cousland* v. *Davis*, 4 Bosworth, 619 ; *Freeman* v. *Harwood*, 49 Maine, 195 ; *Monk* v. *Graham*, 8 Modern R., 9. These are all cases where stock had been given in pledge as collateral security, and the action of trover was sustained for the conversion of the same, without any suggestion being made to the contrary by court or counsel.

A majority of the court are of the opinion that the first count is sufficient.

In relation to the second count, we are all of the opinion that it is sufficient. The ground of complaint set forth in this count is the conversion of the property by the defendant. The remaining allegations contain merely a statement of the means employed by the defendant to obtain possession of the

property, in order that he might carry into execution his preconceived intention to convert it to his own use. The count sets forth all the facts and circumstances with great particularity, but the substance of it is that the defendant, knowing the pecuniary condition of the plaintiff, devised the scheme therein stated to obtain the stock of the plaintiff, and then convert it to his own use; which scheme was successfully carried out and the conversion accomplished. The count contains all the essential averments of an action of trover, aggravated by the deception used to obtain possession of the property. It states that the stock belonged to the plaintiff; that it was placed in the hands of the defendant as collateral security for certain endorsements made by the defendant for the benefit of the plaintiff; that the obligations on which the endorsements were made were paid and satisfied by the plaintiff, and the defendant had no longer a right to retain the stock; and that the stock was afterwards demanded, and the defendant refused to deliver it, and disposed of and converted the same to his own use. These allegations certainly are sufficient to sustain an action of tort, if we are right in the views we have expressed in relation to the first count in this declaration.

But the defendant claims that nothing appears in this count but a breach of contract. He insists that to constitute fraud a party must make a false statement as to some material existing fact, knowing it to be false. This is not necessary in all cases of fraud. If a vendor intentionally conceals from the vendee a material latent defect in a horse which he is selling, and the sale is made; or if he should say that the horse was sound so far as he knew, when he knew him to be unsound, and the unsoundness consisted in a latent defect which impaired his value, he would be guilty of fraud. 1 Swift's Digest, 554. So if a man purchases goods with a preconceived design not to pay for them, he is likewise guilty of fraud. *Reid* v. *Hutchinson*, 3 Camp., 352; *Noble* v. *Adams*, 7 Taunt., 89; *Bristol* v. *Wilsmore*, 1 Barn. & Cress., 514; *Killey* v. *Wilson*, Ryan & Moody, 178; *Hawse* v. *Crowe*, id., 414; *Ferguson* v. *Carrington*, 9 Barn. & Cress.,

59; *Dow* v. *Sanborn*, 3 Allen, 181; *Hall* v. *Naylor*, 18 N. York, 588.

It is alleged in this count that the defendant, in order to induce the plaintiff to give up his claim against the corporation and take stock in lieu thereof, informed the plaintiff that he would indorse his paper without further compensation and without security, intending at the same time not to do it, but to demand security when the time should come, in order to compel the plaintiff to put his stock into his hands; and intending further, when this should be done, to appropriate the stock to his own use. It is alleged that the defendant was successful in his scheme of depriving the plaintiff of his property and in converting the same. The contract is not set out as the basis of recovery, but as the means whereby the defendant accomplished his original purpose to convert the property. It is the dishonesty in making the false promises in furtherance of his scheme of fraud, that is the basis of the action, in connection with the conversion of the property. The scheme had several progressive steps in the order of its accomplishment. First, the plaintiff was to be deprived of the means to meet his engagements. This was accomplished by the defendant pretending that if the plaintiff would give up his claim against the corporation and take stock in lieu thereof, he would indorse his paper to meet his engagements, without further compensation and without security. Secondly, the plaintiff was to be compelled to put his stock into the defendant's hands. This was accomplished by the refusal of the defendant to indorse the plaintiff's paper as he had agreed without security, and by his persuading him that the stock would be returned by the defendant when he should be saved harmless from his indorsements. Thirdly, the final consummation of the scheme, which was accomplished by the conversion of the property after the obligations were paid on which the indorsements were made. It would seem that if a man is guilty of fraud in the purchase of goods when he has a secret intention not to pay for them, much more is he guilty of fraud if, after he devises a scheme for getting possession of the property of another without

buying it, and appropriating it to his own use, he goes deliberately at work to carry his scheme into execution by making promises with the intention at the time not to fulfill them, and breaks them as often as they are made in accordance with his original intention, and so goes on to the consummation of his plan. Where lies the fraud in buying goods with an intention not to pay for them? It lies in the fact that the fraudulent purchaser gives the seller to understand that his intention is to pay for them. His deceit therefore is in his statement with regard to his intention. Here the defendant promised the plaintiff that he would indorse his paper without further compensation and without security. It is charged that that promise was made with the intention not to fulfill it. The defendant further promised the plaintiff that the property should be returned when he was saved harmless from his indorsements. It is charged that that promise was made with no intention to keep it, but with the intention to convert the property to his own use. We have no hesitation in saying that an actionable fraud is charged in this count.

Very little need be said in relation to the third count in this declaration, for, as we view it, a similar count has been sustained by this court in the recent case of *Stevens* v. *Hurlburt Bank*, 31 Conn., 147. All the difference in the two cases seems to be that in the case referred to the stock was pledged as collateral security, and here a transfer of it was obtained for a fraudulent purpose. But the property in reality belonged to the plaintiff, and when the object was accomplished for which it was transferred the plaintiff was entitled to its immediate return. It was his then absolutely, and the conversion of it by the defendant was as great a wrong as it would have been if the property had been pledged. But nothing further need be said of this distinction, as the defendant makes no point of it in his brief.

The gist of the action in this count, like the others, is the selling and disposing of the property belonging to the plaintiff, after the purpose for which it was placed in the defendant's hands had been accomplished. The statement

of duty is merely the statement of what was implied by law
from the acts of the parties, and the statement of the agree-
ment was made merely to show the relations of the parties
and their rights to the property under the circumstances.
We think this count likewise is sufficient.

We therefore advise the Superior Court that all three of
the counts in this declaration are sufficient.

In this opinion CARPENTER and PHELPS, Js., concurred.
FOSTER, J., dissented upon the first point, but concurred
upon the others. PARDEE, J., did not sit.