[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs bring this action in two counts. The first count is in negligence and the second is in conversion.
The defendant has filed an answer, two special defenses to count one and one special defense to count two.
Facts
The plaintiff Bruce W. DeVito (Bruce) is the adopted son of the plaintiff James R. DeVito (James). James is a principal in an entity known as DeVito Bros. Excavation. (DeVito Bros.). Some time prior to November, 1982 while Bruce was a minor, his natural father died and left him an inheritance. On or about January 14, 1983 James was appointed guardian of Bruce's minor estate with a value of CT Page 2203 about $32,000.
Some time prior to December 12, 1985 James as trustee for the benefit of Bruce invested with First Investors Corporation and on January 6, 1986 closed out that $37,525.22 account and had the funds transferred to DeVito Bros. account #26566.7.
On or about April 28, 1989 James filed his final accounting for Bruce's guardian estate account showing a balance for distribution of $65,372.57.
The defendant is a Connecticut savings bank.
On or about March 9, 1988 Bruce and James opened a non-interest bearing joint checking account #01-56-4000012 (Prior Account) with defendant. Prior Account grew by about $2,000 until it was closed on October 29, 1988 by "Transfer Closeout [to] 01-4001067" of $20,518.82[1]
On September 9, 1988, Bruce DeVito signed signature cards to open a money market account #01-27-4001067 at the defendant with James. Some time after September 9, 1988 but before October 20, 1988, James signed the same signature cards. The social security number on the cards is James'.
On October 20, 1988, Account No. 01-27-4001067 was opened at the defendant as the joint account of "Bruce W. DeVito" and "James DeVito" (the "Account").
Bruce was 19 years old when the Account was opened.
The defendant's customer service representative Monique Jordan's (Jordan) handwriting is on the signature cards for the Prior Account and she dealt with Bruce when he opened the Prior Account. It is Jordan's custom and habit to explain to each customer the type of account being opened and to hand out a deposit account agreement (Agreement). She gave Bruce a copy of the Agreement when the Prior Account was opened, as is required by C.G.S. § 36-27d.[2]
The defendant's customer service representative Kathleen Bott's (Bott) handwriting is on the signature CT Page 2204 cards for the Account and the type face on the signature cards for the Account is unique to Bott's typewriter. She dealt with Bruce when he opened the Account.
It is Bott's custom and habit to explain to each customer the type of account being opened and to hand out an Agreement and she gave Bruce a copy of the Agreement when the Account was opened.
The signature cards executed by both James and Bruce incorporate the terms of the Agreement by stating in pertinent part:
 "I have received the Farmington Savings Bank Deposit Account Agreement and Electronic Funds Transfer Agreement and I agree to those rules that are applicable to my account."
At trial Bruce did not recall the Prior Account; the amount of money put into the Account when it was opened; or the source of that money.
The Agreement given to Bruce upon the opening of the Account was effective as of 1/85. The Agreement was amended effective 11/89. This amendment did not alter, in any way, the terms or language of the defendant's right of set-off.
Ten checks were written on the Account; nine were signed by James and one by Bruce.
On May 26, 1987 one David A. Coyne (Coyne) and James gave a promissory note for $550,000 to defendant. This note also gave the defendant the right of set-off against James' "deposits . . . in the possession or control of . . . the Bank".
James and Coyne defaulted in paying that note and as of March 14, 1990 it was in default.
On March 14, 1990, the defendant exercised its right to set off funds in the Account to pay the debt due from James under that note and took $28,300 out of the Account. The defendant credited that amount to James' and Coyne's defaulted note debt. CT Page 2205
Bruce never specifically pledged the Account to answer for his own possible debts or those of James and Coyne, except as the Agreement might provide.
The court can find nothing unconscionable about defendant's actions.
This court cannot find that defendant breached the Agreement.
Law
I Negligence
The plaintiffs have the burden of proof and must show that the defendant was negligent. The plaintiffs have failed to meet that burden.
II Conversion
Conversion in the law is an unauthorized assumption and exercise of right of ownership over goods belonging to another, to the exclusion of the owner's rights. Falker v.Samperi, 190 Conn. 412, 419. (20,000 cubic yards of earth or gravel).
A casual reading of the Connecticut cases on conversion (and Trover) might lead one to believe that the "goods" referred to are tangible chattels. This is not so. Intangible "goods" are also subject to conversion. Healeyv. Flammia, 96 Conn. 233, 237-238 (promissory notes);Hoyt v. Stuart, 90 Conn. 41 (note and mortgage); Lovell v.Hammond, 66 Conn. 300 (a check); Ayres v. French, 41 Conn. 142,151-153 (shares of stocks); Devitt v. Manulik, 176 Conn. 657,662-663 (savings bank passbook).
On this issue defendant presses the case of Alexiou v.Bridgeport-Peoples' Savings Bank, 110 Conn. 397 on the court. That case made a distinction between a commercial bank and a "mutual savings bank." Id. 400. We do not know if the defendant is a mutual savings bank.
That case involved three entities as it concerned a garnishment of funds on deposit with the bank by the CT Page 2206 judgment debtor of the plaintiff. Conversion of the account was not in issue. When the fog is dispersed it is a simple garnishment case.
Defendant's set-off was authorized by the Agreement and thus plaintiffs have failed to prove the elements of conversion. Falker v. Samperi, supra 419.
Judgment for defendant on both counts.
N. O'Neill, J.