[No. 6,261.]

# PAYNE v. ELLIOT ET AL.

CONVERSION — TROVER—ACTION.—At common law, trover lay only for tangible property; but in our system, the action has been developed into a remedy for the conversion of every species of personal property. *Held*, accordingly, in an action for the conversion of shares of stock of a corporation—that it is "the shares of stock" which constitute the property of the stockholder, and not the certificate; and that an action is maintainable for the conversion of *the shares of stock* which the certificate represents, as well as for that of the *certificate*.

ID.—FRAUD—IMPRISONMENT.—In order to justify a judgment for the imprisonment of the defendant on the ground of fraud, the facts upon which the charge of fraud is based must be specifically alleged in the complaint; and *held*, that an allegation in the complaint that the defendants received personal property in a fiduciary capacity, as agents of the plaintiff, and that they were guilty of fraud in receiving and converting such property to their own use, was insufficient to sustain such a judgment.

APPEAL from a judgment for the plaintiff, in the Twelfth District Court, City and County of San Francisco. DAINGERFIELD, J.

The facts are stated in the opinion.

*J. M. Seawell*, for Appellants.

There is no allegation that the defendants received or converted any *certificate* of stock, but only that they converted one hundred shares of stock. Trover lies only for goods or personal chattels. (1 Chitty Pl. 165–6, 2nd ed. 835.) Shares of stock are not chattels, but ideal things. (Ang. & Ames on Corp. §§ 560–2.) The statement that defendants received the shares in a fiduciary capacity, and that they are guilty of fraud, is insufficient. The facts should have been stated. (Code Civ. Proc. § 479, subds. 2 and 4; *Porter* v. *Herman*, 8 Cal. 625; *Davis* v. *Robinson*, 10 Id. 411; *Kent* v. *Snyder*, 30 Id. 666; *Oakland* v. *Carpentier*, 21 Id. 642.)

*L. Quint*, for Respondent.

Department No. 1, McKEE, J.:

This is an action of trover. The plaintiff seeks to charge defendants with $2,796.32 and costs, for an alleged conversion

of one hundred shares of the stock of the " Northern Belle Mill and Mining Company," and also to have them adjudged guilty of fraud. The complaint was demurred to on several grounds, and the demurrer overruled. Defendants afterward answered, and, upon a trial had in the absence of defendants and their attorneys, the Court gave judgment for the plaintiff for the amount sued for, in gold coin, and also adjudged that the defendants were guilty of fraud. The appeal comes to this Court upon the judgment roll, and the appellants claim that the lower Court erred in overruling defendants' demurrer to the complaint, upon the grounds that there is no allegation that the plaintiff owned, or that the defendants converted, any *certificates* of shares of stock; and that the allegation of fraud is insufficient to sustain the judgment that the defendants were guilty of fraud in the supposed conversion. The principal question is, whether shares of stock, *eo nomine*, are property for which an action, in the nature of an action of trover, can be maintained.

At common law, trover was the proper remedy for a conversion of personal property ; but it lay only for tangible property, capable of being identified and taken into actual possession. The conversion of the property was the gist of the action; and the action did not lie, unless the defendant had become actually possessed of the property by some means, whether of finding or otherwise. Shares of stock, and such things, did not belong to that class of property known as chattels; they were considered incorporeal, intangible things, which existed in idea, and were incapable of being subjected to actual possession. Nor were they supposed to denote possession ; for they had no other evidence of an existence than the certificate which was issued to the person who claimed the right to what the certificate represented. That right consists of the privilege of voting in the concerns of the corporation, and of participating in the profits of the business of the corporation. It subsisted only in law or contract. It was a right to a thing not in possession, but in action. The certificates themselves were not considered property, but were considered evidence of property. Wherever common-law ideas of personal property prevail, courts

hold that trover is not the proper remedy for the conversion of things which were considered at common law as mere personal rights, not reducible into possession, but recoverable by law. So, the Supreme Court of Pennsylvania has held that trover will not lie to recover damages for shares of bank stock; and, says Justice Sharswood, "the principle applies to all other corporation stocks." A share of stock, say the Court, "is an incorporeal, intangible thing. It is a right to a certain proportion of the capital stock of a corporation—never realized except upon the dissolution and winding up of the corporation—with the right to receive, in the meantime, such profits as may be made and declared in the shape of dividends. Trover can no more be maintained for a share in the capital stock of a corporation than it can for the interest of a partner in a commercial firm." (*Neiller* v. *Kelly*, 69 Penn. 407.)

Upon the idea that shares of stock cannot be taken away or wrongfully detained from the owner, or that they cannot be lost by the owner or found by a stranger, there is no doubt of the soundness of that decision. But the fiction on which the action of trover was founded, namely, that a defendant had found the property of another, which was lost, has become, in the progress of law, an unmeaning thing, which has been by most courts discarded; so that the action no longer exists as it did at common law, but has been developed into a remedy for the conversion of every species of personal property. It lies for bank notes sealed in a letter (*Moody* v. *Keeney*, 7 Ala. 218); for negotiable instruments (*Comparet* v. *Burr*, 5 Blackf. 419); for a judgment (*Hudspeth* v. *Wilson*, 2 Dev. N. C. 372); for a promissory note which has been paid (*Pierce* v. *Gibson*, 9 Vt. 216); for copies of a creditor's account (*Fulton* v. *Cunningham*, 16 Vt. 697); for a writ of execution issued on a judgment (*Keeler* v. *Fasset*, 21 Vt. 539); and for *certificates* of shares of stock (*Anderson* v. *Nicholas*, 28 N. Y. 600; *Atkins* v. *Gamble*, 42 Cal. 98; *Von Schmidt* v. *Bourne*, 50 Id. 616.)

At the same time that the action has been thus expanded, the words "things in action" have undergone such a development from their original meaning, that they now represent things to the imagination in the light of tangible objects; and, as such,

they are the subject of contract, sale, gift, mortgage, bailment, and pledge; and, under the provisions of our Codes, they are personal property, subject to taxation, attachment, execution, levy, and sale. (Sections 542, 688, Code Civ. Proc.)

It is, therefore, the "shares of stock" which constitute the property which belongs to the shareholder. Otherwise, the property would be in the certificate; but the certificate is only evidence of the property; and it is not the only evidence, for a transfer on the books of the corporation, without the issuance of a certificate, vests title in the shareholder: the certificate is, therefore, but additional evidence of title, and if trover is maintainable for the certificate, there is no valid reason why it is not also maintainable for the thing itself which the certificate represents. For, as the Supreme Court of Connecticut say, "If a certificate of stock is unlawfully retained when demanded, what is presumed to have been converted? The certificate has no intrinsic value disconnected from the stock it represents. No one would say that the paper alone had been converted—that the conversion of the paper constitutes the entire wrong. The real act done in such cases is precisely the same as that done here—no more, no less; and to say that trover will lie in one case and not in the other, is to make a distinction where in reality there is no difference. * * * The stock in both cases was converted; and we think that in these days, when the tendency of courts is to do away with technicalities not based upon reason, a technical distinction of this character should no longer be sustained." (*Ayres* v. *French*, 41 Conn. 151.) In *Boylan* v. *Hagnel*, 8 Nev. 352, and in *Kuhn* v. *McAllister*, 1 Utah, 275, actions of this character for "shares of stock" were sustained. It follows that the Court below did not err in overruling the demurrer to the complaint, or in rendering judgment for the plaintiff for the value of the stock and interest thereon from the time of the conversion until the time of the trial.

But the judgment for fraud exceeds the relief to which the plaintiff was entitled by his complaint for the only averments upon the subject of fraud are: "That the defendants received said shares of stock in a fiduciary capacity, as the agents of this plaintiff and not otherwise'; and "that defendants were

and are guilty of fraud in receiving and converting said stock to their own use." It is not altogether clear how a person is chargable with fraud by receiving shares of stock in a fiduciary capacity; for, as the term "fiduciary" imports, the defendants must have received them rightfully to hold in trust for the plaintiff. But if the defendants, as trustees of the plaintiff, fraudulently converted the stock to their own use, the facts which constituted the imputed fraud should have been stated; for fraud is never presumed, but must be proved; and to be proved, the facts upon which the charge is based must be specifically alleged in the complaint. (*Davis* v. *Robinson*, 10 Cal. 412.)

Without any issuable averments upon the subject, the Court finds "that the defendants were the agents of the plaintiff; that the plaintiff delivered the stock to them to hold as security for the payment of $409 which he owed to them, and that they received it in the course of their employment as such agents and in a fiduciary capacity." Upon these findings the Court "adjudged the defendants guilty of having fraudulently misapplied and converted said one hundred shares of the capital stock of the Northern Belle Mill and Mining Company to their own use, and that the defendants be arrested and held in custody until they pay the amount of this judgment, or until they shall otherwise be legally discharged from custody." The judgment in this respect is not warranted by the case stated in the complaint or the findings.

Some time after the judgment had been rendered, the Court below undertook, by an order entered upon the minutes of the Court, to modify it by "striking out the last six lines therein"; but that does not cure the error. The judgment convicting the defendants of fraud and ordering their arrest should be vacated.

It is hardly necessary to remand the cause for a new trial for that purpose, but the Court below is directed to strike from the judgment the following matter, viz: "And that plaintiff is entitled to an order of arrest against said defendants until the same shall be paid.   *   *   And it is further ordered, adjudged, and decreed that defendants were the agents of the said plaintiff, and that they received one hundred shares of the capital

stock of the Northern Belle Mill and Mining Company, of the value of $2,950. That they received the same as the agents of the said plaintiff, and in a fiduciary capacity, and refused to deliver the same to plaintiff, on demand; and that they, the said defendants, converted the same to their own use, and against the will or consent of said plaintiff, by reason of which they are hereby adjudged guilty of fraud. And it is further ordered, adjudged, and decreed that said defendants be arrested, and held in custody until they pay the amount of this judgment, or until they otherwise legally be discharged from custody."

Thus modified, the judgment is affirmed.

McKINSTRY, P. J., and ROSS, J., concurred.