[L. A. No. 15966. In Bank.—February 18, 1937.]

JACOB BYER, Respondent, v. THE CANADIAN BANK OF COMMERCE, Appellant.

Meserve, Mumper, Hughes & Robertson and William Larrabee for Appellant.

Mark S. Feiler, Roy W. Colegate and Guy Richards Crump for Respondent.

EDMONDS, J.—The Canadian Bank of Commerce has appealed from a judgment against it in an action for the conversion of certain bonds which were deposited with it for safekeeping. An imposter secured the bonds from the bank by means of a forged telegram.

The respondent Byer is a former resident of Canada, but has resided in California from time to time since 1914. During that period he has dealt with the bank through its branch at Granum, in the province of Alberta, and has maintained bank accounts there since 1907. At the time of the occurrence of the events in controversy in this case he also had a safe deposit box at the Granum branch of the bank.

In 1931 respondent had certain securities in the possession of Buchan & Company, a brokerage house at Calgary, Canada, and being concerned about them, he communicated with an attorney at Calgary and authorized him to procure the bonds and send them to the appellant bank to be placed in his safe deposit box. The attorney was able to secure three $1,000 bonds, which he sent to the bank with instructions to "place these bonds in safekeeping and hold the same to the order of Jacob Byer of 604 California Bank Building, Beverly Hills, California". The bank on December 31, 1931, acknowledged the receipt of the bonds "to be held for safekeeping on account of Jacob Byer".

During this time respondent had been doing some business with R. T. O'Brien & Company at Beverly Hills. He told Robert T. O'Brien of the difficulty he was having with the brokerage firm in Canada. Under date of December 18,

1931, he gave to Mr. O'Brien a power of attorney "to act for me and in my behalf on all matters, especially to that particular transaction involving the collection of certain securities belonging to me and which said securities are now in the possession of the Buchan Company, Brokers, located in the Imperial Bank Building at Calgary, Alberta, Canada. And I herewith grant to Robert T. O'Brien full power of attorney to act for me, to accept and receipt for, in my name any and all documents pertaining to the collection of the securities above mentioned, and to do all that may be necessary in the premises". On January 4, 1932, O'Brien sent the bank a telegram reading: "Please forward immediately to this address the bonds and stock forwarded to you by Harold E. Crowle, Barrister, Calgary, namely three thousand Alberta bonds sixty preferred shares and sixty common shares Associated Holdings Corporation stock." This telegram was signed "Jacob Byer 604 California Bank Building, Beverly Hills, Calif."

Upon receipt of the telegram, the bank at Granum sent the bonds by registered mail addressed to respondent at the address given in the telegram. The package arrived at Beverly Hills on January 8th and, as the bank had not restricted delivery to the addressee, the package was delivered to an employee of O'Brien, who signed the delivery receipt, "Jacob Byer, by C. Clow." Byer never received the bonds, and brought this action to recover their reasonable value as of January 4, 1932, which he alleged was $2,010. He recovered judgment for this amount.

■ Appellant insists that an action for conversion will not lie because the facts do not show a tortious detention of the property or an act in exclusion or defiance of the owner's rights. But it has been held that the misdelivery of one intrusted with the property of another constitutes a conversion of it even though he acted innocently and by mistake. (26 R. C. L., p. 1112.) In the early case of *Cerkel* v. *Waterman*, 63 Cal. 34, plaintiff was allowed to recover in an action for conversion of wheat which had been sold by the defendants, who were commission merchants, and the proceeds paid by mistake to one Williams.

*Smith* v. *Miller*, 5 Cal. App. (2d) 564 [43 Pac. (2d) 347], was an action in conversion brought to recover from a warehouseman the value of certain items of household furniture

stored with him and delivered to a corporation which claimed to be the owner thereof. This, it was held, constituted a conversion of the goods. No element of negligence was involved. The claimant of the goods convinced the warehouseman that it was the true owner. Thereupon delivery of the goods was made to it. The warehouseman was held liable for a conversion.

The rule has been succinctly stated in the leading case of *Poggi* v. *Scott*, 167 Cal. 372, 375 [139 Pac. 815, 51 L. R. A. (N. S.) 925], where it is said: "The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action. 'The plaintiff's right of redress no longer depends upon his showing, in any way, that the defendant did the act in question from wrongful motives, or generally speaking, even intentionally; and hence the want of such motives, or of intention, is no defense. Nor, indeed, is negligence any necessary part of the case. Here, then, is a class of cases in which the tort consists in the breach of what may be called an absolute duty; the act itself (in some cases it must have caused damage) is unlawful and redressible as a tort.' (1 Bigelow on Torts, p. 6.)"

But appellant insists that, being a gratuitous bailee, it is liable only for gross negligence. The rule is to the contrary. In *Baer* v. *Slater*, 261 Mass. 153, 154 [158 N. E. 328, 54 A. L. R. 1329], the court said: "It is contended, however, by the defendant, that he was a gratuitous bailee, and in the absence of bad faith or of gross negligence, of which there is no evidence, the action cannot be maintained. The plaintiffs directed that the merchandise should be returned 'by express', and no contention is made by them that delivery for transportation to an employee of the American Railway Express Company would not have been a sufficient compliance with their order. But the defendant, while intending to make, and believing that he made, delivery to the express company, in fact gave possession of the merchandise to a stranger. 'A delivery to an unauthorized person is as much a conversion as would be a sale of the property, or

an appropriation of it to the bailee's own use. In such cases neither a sincere and apparently well-founded belief that the tortious act was right, nor the exercise of any degree of care, constitutes a defense even to a gratuitous bailee.' (*Hall* v. *Boston & W. R. Corp.*, 14 Allen, 439, 443 [92 Am. Dec. 783] ; *Jenkins* v. *Bacon*, 111 Mass. 373, 376 [15 Am. Rep. 33, 37, 38] ; 1 Am. Neg. Cas. 781; *Murray* v. *Postal Teleg.-Cable Co.*, 210 Mass. 188, 195 [96 N. E. 316, Ann. Cas. 1912C, 1183].)'' (See, also, 3 R. C. L., p. 104.)

The appellant's liability is not founded upon negligence, but because as a bailee it was under the duty to keep the property and not dispose of it without the authority of the depositor. A somewhat similar situation was presented in the case of *Jenkins* v. *Bacon, supra.* In that case, the defendant was a gratuitous bailee of a bond which had been left with it by the plaintiff. Without the direction of the plaintiff and by mistake the defendant sent the bond by mail to plaintiff's wife, who never received it. The court held that by delivery of the property to a person not authorized to receive it the defendant was responsible for its value without regard to the question of negligence. The court said: ''The complaint against him is, not that he kept it negligently, or lost it by gross carelessness, but that he intentionally disposed of it in a manner not authorized by the terms of the trust. For the purposes of this case, it is wholly immaterial whether the postoffice furnishes a reasonably safe mode of transmission, in the case of valuable papers of such a description, or not.''

A case more nearly in point is that of *Kowing* v. *Manley,* 49 N. Y. 192 [10 Am. Rep. 346]. The defendants as brokers had purchased bonds for plaintiff who had left them in the possession of the defendants under instructions not to deliver them except upon a written order. Plaintiff's wife presented a forged order and secured the property. The defendants were held liable. The court decided that the delivery of the bonds without the bailor's order did not operate as a discharge of the defendants' obligation and that it was incumbent upon the defendants to prove that the order was in the handwriting of the plaintiff. In the instant case, even though the bonds were addressed to the respondent, the appellant subjected them to a risk which the bailor did

not contemplate. It is consequently liable for the loss resulting therefrom. (3 R. C. L., p. 104.)

█ The appellant seeks to avoid liability upon the ground that O'Brien was authorized to deal with the bonds under the power of attorney which he held even though the bank did not know that it was in existence. But this instrument, while authorizing O'Brien to act for respondent "on all matters", contained a specific provision concerning the collection of the securities from Buchan Company. "When an authority is given partly in general and partly in specific terms, the general authority gives no higher powers than those specifically mentioned." (Sec. 2321, Civ. Code.) The power of attorney in question was, therefore, a limited one and did not authorize O'Brien to deal with the bank nor to receipt for any securities from it. (See *Billings* v. *Morrow,* 7 Cal. 171 [68 Am. Dec. 235]; *Quay* v. *Presidio & F. R. Co.,* 82 Cal. 1 [22 Pac. 925]; *Moore* v. *Gould,* 151 Cal. 723 [91 Pac. 616].)

█ Appellant attempts to rely upon the doctrine of estoppel as a defense to plaintiff's claim upon the principle that "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Sec. 3543, Civ. Code.) There is no basis for the application of this rule. To adopt the principle claimed by the appellant would mean that any person who had given another information concerning his property which would afford an opportunity to forge an instrument concerning it, would be without a remedy. Nor can the fact that the respondent gave a limited power of attorney preclude a recovery against one whose acts do not come within the power granted. It was the act of appellant which made it possible for O'Brien to secure respondent's property. Had it complied with the terms of the contract of bailment and not exposed the property to the risk of loss there would have been no loss. Appellant cannot complain of what respondent did in his dealings with O'Brien. (See *Tafft* v. *Presidio & F. R. Co.,* 84 Cal. 131 [24 Pac. 436, 18 Am. St. Rep. 166, 11 L. R. A. 125].)

The judgment is affirmed.

Seawell, J., Shenk, J., Thompson, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.