[Civ. No. 12901.   Second Dist., Div. Three.   Sept. 23, 1942.]

O. B. KEE, Respondent, v. A. L. BECKER et al., Appellants.
A. L. BECKER, Appellant, v. O. B. KEE, Respondent.

468

William H. Brawner and Caryl Warner for Appellants.

Newton M. Todd and Fred A. Watkins for Respondent.

BISHOP, J. pro 'tem.—A. L. and Harry Becker, being over $1,400 in default on a promissory note executed by them in favor of O. B. Kee, the latter obtained a judgment against them foreclosing the chattel mortgage which they had given to secure the note. From this judgment A. L. Becker appeals, contending (a) that the plaintiff had forfeited his right to foreclose his chattel mortgage, and indeed his right to recover the balance admittedly due on the note it secured, because he had converted to his own use the property covered by the mortgage and (b) that evidence was erroneously refused admission which would have supported the affirmative defense of fraud. We have reached the conclusion that the evidence supports the trial court's finding that none of the mortgaged property was converted and that there was no error prejudicial to appellant in sustaining the objection to the proferred evidence.

Kee began the litigation we have before us by filing a complaint in the Municipal Court of the City of Long Beach, by which he sought a foreclosure judgment of less than $2,000 based on the note of the Beckers. The Beckers answered the complaint, and then by way of "a further, separate, and affirmative defense and counterclaim," alleged that there had been fraud on Kee's part in persuading them (the Beckers) to execute the note and mortgage and that they had rescinded the deal and demanded that Kee repay all moneys paid him. The amount of moneys paid was not alleged in this counterclaim, but it appeared unchallenged in the complaint that over $2,000 had been paid. As a part of the

same document but in a "further distinct and affirmative cause of action and counterclaim" it was alleged that Kee had become indebted to the Beckers in the sum of $4,960. The pleading concluded with the prayer that the note and mortgage be declared void and that the Beckers have judgment for $4,960.

The case was tried in the municipal court and a decree of foreclosure and order of sale was entered, in which it was provided that the property covered by the mortgage "be sold at public auction in the manner prescribed by law by the marshal of the Municipal Court of Long Beach." In December, 1938, the marshal took steps calculated to sell a portion of the mortgaged property, the plaintiff being the purchaser.

Early in March, 1939, on motion of the Beckers, the municipal court set aside its judgment for lack of jurisdiction and ordered the case transferred to the superior court. This order was proper, for after the filing of the counterclaim seeking more than $2,000 the municipal court no longer had jurisdiction to try the action and its judgment was void. (Code Civ. Proc., §§ 89 and 396; *Stratton* v. *Superior Court,* (1935) 2 Cal. (2d) 693, 696 [43 P. (2d) 539].) In the superior court the pleadings were augmented by a supplemental answer, in which the Beckers averred that Kee had converted to his own use the property covered by his chattel mortgage.

Shortly after the transfer of Kee's mortgage foreclosure suit to the superior court, an action in that court was commenced by A. L. Becker against Kee. Two counts were set up, one alleging that Kee became indebted to A. L. Becker in the sum of $9,750 on account of certain equipment which Kee had converted, the other claiming that he had become indebted in a like sum on account of money had and received. The goods allegedly converted were those covered by the chattel mortgage, and in addition a McCormick-Deering power unit, two pulleys and six belts. To this complaint Kee filed an answer, which he afterward amended to contain the allegations that he claimed a lien on the property described and that any possession of said property taken by him was taken under his mortgage. By way of counterclaim he set up the balance due under the Becker note.

The two cases were consolidated, tried, and a new judgment of foreclosure entered. In the findings of fact, upon which the judgment was based, it was found that there was no conversion of the equipment covered by the chattel mort-

gage, but that Kee did convert one gas engine, two tanks and a gas trap, owned by A. L. Becker, of the value of $350, which sum was offset against the principal found due under the note.

The burden was of course on the Beckers to prove that Kee had converted their mortgaged equipment, for that it had been converted was their affirmative defense and their cause of action. (Code Civ. Proc., § 1981.) Their position on appeal is that the conclusion that there was a conversion is required by the proved fact that the mortgaged equipment was sold under an execution based on a judgment that was void for want of jurisdiction, and is further required by the facts that a demand was made by them on Kee to return the equipment and that the demand was not complied with.

The jealous regard of the common law for the right of a person to have his property kept free from unauthorized interference, has given rise to "a class of cases in which the tort consists in the breach of what may be called an absolute duty . . .," to borrow from *Byer* v. *Canadian Bank of Commerce,* (1937) 8 Cal. (2d) 297, 300 [65 P. (2d) 67], a part of its quotation from earlier authorities. In *Gruber* v. *Pacific States Sav. & Loan Co.,* (1939) 13 Cal. (2d) 144, 148 [88 P. (2d) 137], we find these definitions of "conversion," the second being quoted from *Hull* v. *Laugharn,* (1934) 3 Cal. App. (2d) 310, 315 [39 P. (2d) 478]:

"It is settled that conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

" 'Conversion consists in the unwarranted interference by defendant with the dominion over the property of plaintiff, from which injury to the latter results. . . . Dominion is defined in law lexicons as "perfect or complete property or ownership in a thing" (Bouvier's Law Dict.) ; "complete ownership; absolute property" (Anderson's Dict. of Law) ; and ownership or right to property." (Black's Law Dict.) ' "

Measured by these standards, in a large measure the arguments made by the Beckers in support of their position on this appeal are sound. ■ A mortgagee who takes possession of the mortgaged goods and sells them to a third party, but who fails to conduct the sale either according to the statute or the terms of the chattel mortgagee, converts the goods and forfeits not only his lien but his right to a deficiency judg-

ment. (*Metheny* v. *Davis,* (1930) 107 Cal. App. 137 [290 Pac. 91].) ■ One can acquire no authority from a judgment void for want of jurisdiction (*Cook* v. *Winklepleck,* (1936) 16 Cal. App. (2d) (Supp.) 759, 768 [59 P. (2d) 463, 467]), so that a levy and sale based on such a judgment renders those participating liable in damages. (*Inos* v. *Winspear,* (1861) 18 Cal. 397; *Bilby* v. *Jones,* (1913) 39 Okla. 613 [136 Pac. 414, 416].) ■ The fact that the acts constituting conversion were done in good faith does not serve to save those acts from having their legal consequence; they still constitute a conversion. (*Byer* v. *Canadian Bank of Commerce, supra,* 8 Cal. (2d) 297, 300 [65 P. (2d) 67].)

■ It is also true that ''It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant.'' These words, quoted from *Dodge* v. *Meyer,* (1882) 61 Cal. 405, 420, in *Gruber* v. *Pacific States Sav. & Loan Co.,* (1939) 13 Cal. (2d) 144, 149 [88 P. (2d) 137], are apt under situations where the owner's dominion over his property has been interfered with, although the one held liable had laid no hands on the property itself. In *Dodge* v. *Meyer, supra,* plaintiff's property was pledged in violation of the terms of its bailment to a third party, the defendant participating in the conversion by his misuse of bills of lading. In the Gruber case the property converted remained at all times in the possession of its owner, but the defendant unlawfully refused to permit the owner to remove his property from defendant's premises and by so doing interfered with the owner's ''dominion.'' In *McCaffey Canning Co.* v. *Bank of America,* (1930) 109 Cal. App. 415 [294 Pac. 45], also referred to in the Gruber case, the act constituting a conversion was the filing of a groundless third party claim, the effect of filing the claim being to cause the plaintiff's attachment lien to be lost because the sheriff withdrew his keeper.

■ Still a further statement concerning conversion should be considered, one originally appearing in *Dodge* v. *Meyer, supra,* 61 Cal. 405, 420, quoted in part in *Lowe* v. *Ozmun,* (1906) 3 Cal. App. 387, 394 [86 Pac. 729], and quoted in full in *Gruber* v. *Pacific States Sav. & Loan Co., supra,* 13 Cal. (2d) 144, 149 [88 P. (2d) 137]. It is this: ''A mere claim of dominion, an intention intimated to interfere with goods under a pretense of right or authority, amounts to a constructive trespass, and no demand is necessary before

bringing an action of trover." No case of which we are aware warrants so broad a statement of what amounts to conversion, and we are of the opinion that it is not to be taken literally. In the Dodge case wheat, which had been received for shipment, was pledged without authority of the owner, an act amounting to more than a mere claim of dominion or an intimated intention. In the Lowe case the defendant who had actual possession of the property as a pledgee, renounced the pledge, asserted that he owned the property and proceeded to sell it. Even if the conversion took place when the defendant notified the owner of the property that he (the defendant) claimed it as his own, there was more than a "mere claim;" there was also possession to make the claim good. Likewise in the Gruber case there was more than a mere claim and more than an intention intimated to interfere. There was, as the Supreme Court pointed out, (p. 147) "not only a written threat to convert plaintiff's property but also repeated refusals of the agents of the defendant lessor, in the immediate proximity of the equipment and elsewhere, to permit the plaintiff to remove his equipment from the premises."

It would not be seriously contended, surely, that a conversion of a city fire truck had taken place because a person asserted that he was the owner, undertook to sell it to a stranger and gave him a bill of sale describing it, if neither party had possession of the truck nor attempted in any way to interfere with the city's complete freedom of action respecting it. Nor would the purchaser of the truck become liable to the city should he say: "I have a bill of sale to that pretty automobile; tomorrow I am going to drive it awhile," so long as he neither attempted to drive it nor interfered with the city's dominion over it. Neither a "mere claim of dominion," nor an "intention intimated to interfere with goods under a pretense of right," without more, constitutes a conversion. Neither comes within the definitions of ".conversion" quoted from the Gruber case, which require that the owner's dominion be affected in some manner, not merely that a rival dominion be claimed or threatened.

An early case recognizing that acts, verbal or otherwise, which do not affect the dominion of the owner do not constitute conversion, is *Herron* v. *Hughes*, (1864) 25 Cal. 555. After reviewing some of the facts the Supreme Court summed up the situation in these words (p. 559):

"We have nothing here but a series of mere appearances, commencing with a judgment alleged to be void upon its face and ending with a sale of goods not in the custody of the official who made it, and who neither delivered, nor attempted to deliver, the goods ito the purchaser (Drake on Attachment, § 265), and who made no return of the sale on the execution. The whole proceeding was *vox et preterea nihil*. In substance it amounted to nothing more than a verbal agreement between three persons to take and convert the property of another. Such an agreement would not affect the right of property, nor would it amount to an intermeddling with it, nor to an exercise of dominion over it subversive of the dominion of the owner. (2 Mass. 398; 7 John. 254; 10 Shep. 326.)"

With the light of these principles illuminating our search what evidence is there which warrants the conclusion that the trial court was mistaken in finding that there had been no conversion? The appellant's answer is that the evidence shows that there was a sale of the mortgaged property. This answer we find quite inconclusive, for there is no evidence of what happened at the sale; it may well have been as substanceless as the sale by the constable in the case referred to in the preceding paragraph.

We gain no information of value from the return of the marshal which, so far as of interest, reads: "I . . . hereby certify . . . that I levied upon the following property belonging to the defendant (describing a part only of that covered by the chattel mortgage).

"That . . . I advertised said property for sale, posting notices as required by law, at Public Auction, on the 12th day of December, 1938 . . . That . . . all of said property was by me sold at the place and in the manner specified in said Notice for Sale. That in such sale all of said property was sold in one Lot to O. B. Kee for the sum of $800.00 Dollars in United States Gold Coin . . . and I have given such purchaser herein named a certificate of said sale. . . .

". . . The sale above referred to was made at the Becker Well near 37th and Locust, . . ." By section 4159 of the Political Code, made applicable to the return of the marshal by section 25a of the act establishing municipal courts (Act 5238, Deering's Gen. Laws, 1937), it is provided that: "The return of the sheriff upon process or notices is prima facie evidence of the facts in such return stated." One who has

the burden of proving a conversion fails in his purpose if he establishes no more facts than appear by the return we have in this case. Whatever may have been the rule prior to *Brusie* v. *Gates*, (1889) 80 Cal. 462 [22 Pac. 284], (see *Ruskin* v. *Cheney*, (1937) 25 Cal. App. (2d) (Supp.) 753, 756 [70 P. (2d) 278]) since that decision it would seem to be settled that the statement in the return that the marshal had levied on the property is not evidence proving that he had taken the various steps required by the code (Code Civ. Proc., § 688, referring back to § 542) to effectuate a levy. The Brusie case dealt with a return after an attachment, but we see no reason not to follow it because of this distinction. Not in the return, therefore, and nowhere in the evidence received at the trial is there proof that the marshal had taken any step in conflict with the defendants' complete dominion over their property, by levying upon it.

As the notice of sale was not admitted in evidence, so far as the record before us discloses, we do not learn from the marshal's return in what manner the sale was actually conducted. ■ At the conclusion of the sale (after the receipt of the gold coin) it was the marshal's duty to deliver to Kee, the purchaser, all of the property capable of manual delivery and a certificate of sale, if he desired it (Code Civ. Proc., § 698), and to give him a certificate of sale covering that property which could not be handed over. (Code Civ. Proc., § 699.) The trial court was warranted in concluding that the marshal never delivered any of the property to Kee, and that the certificate was never made use of, for Kee denied that he ever had taken possession of the property or used it in any way, but asserted that one Ivey, who according to Becker, was in physical possession of the property on the day of the sale, continued in possession until the day of the trial in the present action. Ivey, for some two years prior to the "sale," was in possession of the property in the operation of a well under a sublease from the Beckers. Kee at no time had a lease of any kind on the property.

■ The evidence supported the trial court's conclusion, to be presumed in support of its finding of no conversion, that Kee never in any way interfered with Becker's dominion over the mortgaged property, either personally or by agent, in connection with or as a result of the foreclosure sale. ■ Nor was there any evidence that he had obtained possession through some other source so that he could respond to the

demand made in April, 1939, for the return of the property. "A refusal to comply with a demand for possession of personal property does not amount to a conversion thereof where at the time of the demand it is impossible to comply therewith." (*Thomsen* v. *Culver City Motor Co.*, (1935) 4 Cal. App. (2d) 639, 646 [41 P. (2d) 597, 600].)

It will be recalled that in the conversion action some property in addition to the mortgaged property was alleged to have been converted and that the trial court found that one gas engine, two tanks and a gas trap had been converted. Appellant argues that the finding that the mortgaged property had not been converted was inconsistent with the finding that these pieces of equipment had been, and therefore the judgment should be reversed. In making her argument appellant relies upon *Southern Pacific Co.* v. *City of Los Angeles*, (1936) 5 Cal. (2d) 545 [55 P. (2d) 847], where "diametrically opposite conclusions as to the legal effect of the same occurrences" caused the Supreme Court to substitute its own findings for those of the trial court. We do not consider the doctrine of that case applicable here, for there is no evidence to support the finding that Kee converted the two tanks, and but the slightest upon which to base the finding that he converted the gas engine and trap, and that slight evidence was lacking respecting the mortgaged property. So if we were to apply the doctrine of *Southern Pacific Co.* v. *City of Los Angeles*, *supra*, it would be to modify the judgment adversely to appellant by eliminating at least a part of the offset that she was allowed. Of an error in her favor the appellant may not complain.

Almost forgotten, except for the incidental effect it had of ousting the municipal court of jurisdiction, is the counterclaim of the Beckers, based on the allegation that Kee made certain fraudulent representations whereby the Beckers were induced to execute the note and chattel mortgage sued upon. At the trial no question was asked which could have been calculated to draw an answer that any of the representations alleged were ever made. Appellant is in no position to complain, then, as she does on appeal, that her husband, Harry Becker, was not allowed to testify that he relied upon some unidentified representations which were made, or that Kee made some statements that had no apparent connection with the matters set up in the counterclaim.

As a matter of fact, from the context of the examination, during which the questions, objected to, were asked, the trial court was justified in understanding that the questions had nothing whatever to do with the counterclaim but dealt only with the matter of the value of the mortgaged property.

There appearing no reason why the judgment, which under the evidence is just, should be reversed, it is affirmed.

Schauer, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1942.