[Civ. No. 13478. First Dist., Div. One. Mar. 30, 1948.]

JOHN WILLIAM MEARS, Appellant, v. CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO (a Corporation), Respondent.

Eugene H. O'Donnell and Ralph Bancroft for Appellant.

Chickering & Gregory and John Philip Coghlan for Respondent.

FINLEY, J. pro tem.—This appeal is from a judgment dismissing the action after the trial court had sustained the demurrer of defendant Crocker First National Bank of San Francisco without leave to amend. Defendant I.X.L. Mining Company is a foreign corporation, was not served with summons and was not before the court.

The amended complaint after first alleging the corporate existence of both defendants reads as follows: "That on February 15th, 1946 plaintiff was the owner and holder and entitled to the possession of 20,000 shares of the common stock of defendant I.X.L. Mining Company, which shares were and are represented by certificate No. 4747 for 9,000 shares and certificate No. 7075 for 11,000 shares.

"That said shares were at all the times herein mentioned listed for the purpose of sale upon the San Francisco stock exchange; that the application for listing stock on the San Francisco Stock Exchange contains a stipulation that every corporation having securities listed upon the Exchange must, in accordance with the rules of the exchange, maintain (a) a transfer agent and (b) a registry agent, both in the City of San Francisco, or the State of California; that in compliance with said stipulations and the rules of said Stock Exchange the defendant CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO, a corporation has been at all times herein mentioned and now is the duly appointed, qualified and acting Transfer Agent for and on behalf of the defendant, I.X.L. MINING COMPANY.

"That for the purpose of sale on the stock exchange, it was necessary by reason of an agreement entered into between defendant I.X.L. MINING COMPANY, defendant CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO, and the SAN FRANCISCO STOCK EXCHANGE that common shares of the I.X.L. MINING COMPANY should be converted into blocks of 20 shares each before they could be offered for sale or sold on the SAN FRANCISCO STOCK EXCHANGE.

"That on the 15th day of February, 1946, the plaintiff duly made demand in writing to the defendant CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO at its place of business at San Francisco to have the above described certificates cancelled and certificates for blocks of 20 shares per block issued to him in their stead; that said defendant declined and refused to make said transfer and declined and refused to permit the plaintiff to have said certificates converted into blocks of 20 shares.

"That on April 3rd, 1946, plaintiff received a letter from defendant CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO which is in words and figures as follows, to-wit: 'CROCKER FIRST NATIONAL BANK of San Francisco Established 1870 Cable Address "Crockfirst" San Francisco, 20 April 3, 1946

3084 Mr. John W. Mears, 5366 The Toledo, Long Beach, 3, California. This is to inform you that we have received from IXL MINING COMPANY authority to convert certificates Nos. 4747, for 9,000 shares and No. 7075 for 11,000 shares of Philippine Registry to San Francisco Block shares.

" 'We accordingly are now prepared to convert such shares upon receipt, from you, of the above certificates, duly endorsed, with your signature quaranteed by a bank *of* trust

FPG:awr

company. Yours very truly, F. P. Gray/ ASSISTANT TRUST OFFICER.'

"That on the 15th day of February, 1946, the date on which plaintiff made his demand the said stock of the corporation defendant I.X.L. MINING COMPANY was of the market value of $5,500; that the refusal of defendants to transfer said stock or to convert the same to Block shares and to issue certificates for block shares therein constituted a conversion of said stock to the damage of plaintiff in the sum of $5,500.00.''

As will be noted, the only point to be decided is whether a stock transfer agent for a corporation, having entered into a three-way agreement with the corporation and the stock exchange limiting sales of the corporation's stock on the exchange to blocks containing a certain specified number of shares, can by reason thereof be held liable to a stockholder in conversion for refusal upon proper demand to convert the stockholder's holdings of the corporate stock into blocks containing the number of shares specified in said agreement.

Respondent bank argues as a general principle that an agent is not liable to a third person for a mere nonfeasance, the failure to perform a duty owed solely to the principal, which failure on the part of the agent might incidentally affect adversely the interests of such third party. Whatever merit this argument may have as an abstract principle of law it is not applicable here for in the instant case the agent went further, according to the allegation in the complaint which we must assume for purposes of this appeal to be true, and actively participated in exercising some degree of dominion over plaintiff's stock. This exercise of dominion consisted of first entering into the agreement imposing conditions upon the free exercise of plaintiff's right to sell, convey or dispose of his stock and by then refusing to perform a resultant duty. This duty was that of placing plaintiff in position to comply with the imposed condition. Where his certificates represented

larger blocks than were acceptable for sale on the stock exchange under the agreement it was the transfer agent's duty on proper demand to make the necessary certificate adjustments.

This case is distinguishable from *Lacoe* v. *Wolfe*, 133 Cal. App. 159 [23 P.2d 831] relied upon by respondent bank. *Lacoe* v. *Wolfe* was not an action in trover, alleging a conversion of stock, but was an action brought against the directors and the secretary of a corporation seeking damages for refusal of the ''company'' to transfer plaintiff's stock pursuant to his request. In the first paragraph of the opinion it is stated that the action was brought on the theory that the directors and secretary ''had entered into a conspiracy to induce and prevent the *secretary* from transferring the stock in question to plaintiff.'' (Emphasis added.) The second paragraph outlines the allegations of the complaint as follows: ''This complaint, after alleging certain facts about the organization of the corporation, the amount of its stock and the acquiring of practically all of the same by the plaintiff, alleges that the plaintiff demanded of the *company* that the stock be transferred; that the defendants conspired to induce the *company*, through its secretary, to refuse to transfer the stock for the purpose of defrauding the plaintiff as owner and holder of the stock; that in pursuance of such conspiracy the defendants directed, requested and advised the *company* through its defendant secretary not to make the transfer requested; that by the exercise of threats, persuasions and promises the defendants induced the *company* through its said secretary to refuse to make said transfer; that said *company* by reason thereof refused to make such transfer; that such refusal was wrongful; that as a result of such interference on the part of defendants, plaintiff was deprived of his rights as owner and holder of the stock.'' (Emphasis added.)

As will be noted there is some difference between the theory of the case as outlined by the court in the first paragraph and that to be gleaned from the résumé of the allegations in the complaint as outlined by the second paragraph. However, at the bottom of page 161 we find this statement: ''While the appellant insists that the gist of his action is a conspiracy to prevent the secretary from acting, the fact that the act complained of was the act of the corporation is recognized in the many allegations of the complaint that the transfer was requested of and refused by the 'company.' ''

Obviously, while there may be many points of similarity in rules governing the conduct, obligations and responsibilities of a transfer agent who is not an officer or employee of a corporation, and one who is, there are also points of difference. Ordinarily an officer or employee would be duty bound to handle registrations or transfers according to corporate rules or instructions without any question of a contract or agreement as to what the agent's course of conduct would be. With an agent disassociated from the principal and acting merely as agent for a specific purpose an agreement such as that alleged here might well be not out of order. In the instant case the complaint first sets forth the limitation placed upon disposal of plaintiff's stock by reason of the agreement to which defendant as transfer agent was a party and then alleges plaintiff's demand upon the agent in writing and its refusal to make the transfer. It is not alleged that the corporation refused to make the transfer or that it instructed, sanctioned or ever knew of the refusal. It is undoubtedly true that even though the corporation took no part in refusing plaintiff's demand it would still be liable for such an act on the part of its agent if wrongful. We do not subscribe, however, to respondent bank's contention that *Lacoe* v. *Wolfe, supra,* is authority for the proposition that when an agent acts independently of instructions from its principal that said agent may not be held severally liable under such circumstances as we have here. In the absence of statutory provision to the contrary there is no sound reason we can ascribe why a stock transfer agent should be placed in any different legal category than any other agent. Section 2343 of the Civil Code renders an agent responsible to third persons when his acts are wrongful in their nature and it can hardly be maintained that an unjustified refusal to transfer stock which would admittedly constitute conversion if done by the principal could be considered as not wrongful in nature if done by an agent. ██ *Lacoe* v. *Wolfe, supra,* was decided under former section 324 of the Civil Code which imposed a limitation on the liability of an officer of a corporation for unwarranted refusal to transfer stock by providing a maximum penalty and limiting the time within which an action for recovery might be brought. This section was repealed upon adoption of the uniform stock transfer act in 1931 and no new statutory limitation governing such liability was enacted. We do not believe that in repealing this section the Legislature intended to decree that

thereafter there should be no liability under any circumstances. We must assume that in failing to specifically legislate upon the subject it was intended that the general principles applicable to agents should thereafter apply. Inasmuch as the decision in *Lacoe* v. *Wolfe, supra,* was decided while section 324 was still in effect, the statement (p. 161) that ''While a corporation may be liable for such a refusal to act on the part of its secretary, if wrongful, in the absence of any statutory provision the secretary is not personally liable for such an official act,'' was without the issue to be decided and was therefore dictum. It is without the issue here insofar as an officer of a corporation acting as transfer agent, and sans any independent agreement, is concerned, and we do not purport to decide it. We are dealing here only with an independent agent acting under an alleged agreement between the agent, its principal and a third party. Bearing on the question of liability in general, attention is directed to the following language from two comparatively recent cases. ■ ''The true rule is, of course, that the agent is liable for his own acts, regardless of whether the principal is liable or amenable to judicial action.'' (*James* v. *Marinship Corp.,* 25 Cal.2d 721, 742-743 [155 P.2d 329, 160 A.L.R. 900].) ■ ''. . . directors and officers of a corporation are liable equally with the corporation for its acts in which they participate.'' (*Thomsen* v. *Culver City Motor Co., Inc.,* 4 Cal.App.2d 639, 644 [41 P.2d 597].)

Turning now to a consideration of those acts which constitute conversion we find in *Kee* v. *Becker,* 54 Cal.App.2d 466, 470 [129 P.2d 159], the following language: ''The jealous regard of the common law for the right of a person to have his property kept free from unauthorized interference, has given rise to 'a class of cases in which the tort consists in the breach of what may be called an absolute duty . . .' to borrow from *Byer* v. *Canadian Bank of Commerce* (1937), 8 Cal.2d 297, 300 [65 P.2d 67], a part of its quotation from earlier authorities. In *Gruber* v. *Pacific States Sav. & Loan Co.* (1939), 13 Cal.2d 144, 148 [88 P.2d 137], we find these definitions of 'conversion,' the second being quoted from *Hull* v. *Laugharn* (1934), 3 Cal.App.2d 310, 315 [39 P.2d 478]:

'' 'It is settled that conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'

'' ' ''Conversion consists in the unwarranted interference by defendant with the dominion over the property of plaintiff,

from which injury to the latter results. . . . Dominion is defined in law lexicons as 'perfect or complete property or ownership in a thing.' (Bouvier's Law Dict.); 'complete ownership; absolute property' (Anderson's Dict. of Law); and 'ownership or right to property.' (Black's Law Dict.)'''''

In *Mier* v. *Southern California Ice Co.*, 56 Cal.App. 512, 517 [206 P. 83], the rule is stated as follows: "Any act of ownership or exercise of dominion over the property of another, in defiance of his rights, is a conversion of that property." In *Lusitanian-American Development Co.* v. *Seaboard D. C. Corp.*, 1 Cal.2d 121 [34 P.2d 139], the Supreme Court at page 129 quotes the above rule of the Mier case together with the rule laid down in *Swim* v. *Wilson,* 90 Cal. 126 [27 P. 33, 25 Am.St.Rep. 110, 13 L.R.A. 605], which latter involved a sale of property belonging to another, and then has the following to say (p. 129): "The rules above stated as to what constitutes conversion have been the settled law of this state since the decision in the case of *Swim* v. *Wilson, supra.*"

It is not necessary to a conversion that there should be a manual taking of the thing in question. (*Dodge* v. *Meyer,* 61 Cal. 405, 420; *Gruber* v. *Pacific States Sav. & Loan Co.,* 13 Cal.2d 144, 149 [88 P.2d 137]; *Kee* v. *Becker,* 54 Cal.App. 2d 466, 471 [129 P.2d 159].) It is also well settled in California that shares of corporate stock are subject to an action in conversion. (*Ralston* v. *Bank of California,* 112 Cal. 208, 213 [44 P. 476]; *Jackins* v. *Bacon,* 63 Cal.App. 463, 468 [218 P. 1027]; *People* v. *Flanagan,* 60 Cal. 2 [44 Am.Rep. 52]; *Payne* v. *Elliot,* 54 Cal. 339 [35 Am.Rep. 80]; *Nichols* v. *Leach,* 114 Cal.App. 545, 550 [300 P. 103].) This rule applies as well to the shares represented by a certificate as to the actual certificate. (*Payne* v. *Elliot, supra.*) Furthermore, it is not necessary that possession of the certificate evidencing title be disturbed. (*Payne* v. *Elliot, supra; Dodge* v. *Meyer, supra.*) In *Ralston* v. *Bank of California, supra,* the following statement appears (p. 213): " 'where a corporation refuses to allow a transfer of shares upon its books, the assignee may treat this as a conversion of his shares and sue the company for their value.' (Morawetz on Corporations, sec. 217.) Such is the law as declared and enforced in this state." (See, also, *Kimball* v. *Union Water Co.,* 44 Cal. 173 [13 Am.Rep. 157].)

One of the incidents of ownership is the free and unhampered right to dispose of property without limitations imposed by strangers to the title. Defendants in their briefs

urge that there was no such contract as that alleged in the amended complaint; that it was only reasonable on account of certain wartime regulations pertaining to securities or stock in Philippine corporations that defendants should have been cautious in transferring such stock and that under the circumstances a six weeks' delay was not unreasonable. These are all matters of defense which might be properly urged upon a trial but which we cannot consider here. For purposes of this appeal, where the matter comes up by reason of the sustaining of defendants' demurrer without leave to amend, all of the allegations in the complaint must be regarded as true. Thus when, according to the complaint defendant transfer agent become a party to an agreement which very effectively limited plaintiff's right to dispose of his stock when, where and how he chose, and then refused to convert his stock into the 20-share blocks required under the agreement, it is obvious that it thereby participated in the exercise of unwarranted dominion over plaintiff's property and consequently rendered itself liable to plaintiff in conversion.

We therefore hold that it was an abuse of discretion for the trial court to sustain the demurrer without leave to amend. We do not decide, however, that the amended complaint was not subject to special demurrer, and the trial court may in its discretion require the clarification of any uncertainties or ambiguities therein. The judgment is reversed.

Peters, P. J., and Bray, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 27, 1948.