[No. H003318. Sixth Dist. Oct. 13, 1988.]

ROBERT W. SCHWENKE, Plaintiff and Appellant, v.
J & P SCOTT, INC., et al., Defendants and Respondents.

**COUNSEL**

Robert J. Williams, Helen E. Williams and Williams & Williams for Plaintiff and Appellant.

Laurence J. McEvoy and Stone, Clayton & McEvoy for Defendants and Respondents.

## OPINION

**BRAUER, J.**—Plaintiff Robert Schwenke appeals from a judgment of dismissal for failure to bring an action to trial within five years of its commencement.[1] He relies upon section 583.340, subsections (a) and (c), which provide for a tolling of the five year statute for periods during which "the jurisdiction of the court to try the action was suspended," or it was otherwise "impossible, impracticable, or futile" to bring the action to trial. We find that these provisions do not operate to relieve Schwenke from the five-year bar and accordingly we affirm the judgment of dismissal.

## BACKGROUND

On December 31, 1981, Schwenke filed a verified complaint in municipal court to foreclose a mechanic's lien in the amount of $11,635. On June 29, 1982, defendants J & P Scott, Inc. and John Scott (collectively Scott) filed a verified answer and an unverified cross-complaint seeking damages for breach of contract in the amount of $35,000. Schwenke responded to the cross-complaint with a general denial.

On December 8, 1982, Scott moved to have the action transferred to Superior Court on the ground that the amount in controversy exceeded the jurisdictional limits of the municipal court. That motion was heard on January 7, 1983; it was unopposed and the order transferring the action was filed February 1, 1983. The case was docketed in the superior court on March 14, 1983. Thereafter the matter went out to arbitration. Schwenke rejected the arbitrator's award and on March 12, 1984, requested a trial de novo. The case was then restored to the trial calendar. At the August 30, 1984, status conference, however, Schwenke requested that the case be ordered off the active calendar.

There followed a hiatus of approximately two and one-half years, during which time there was no activity whatsoever on the case until Schwenke moved to restore it to the trial calendar on March 5, 1987. On May 15, 1987, Scott moved to dismiss under the five-year statute. The motion was heard on June 4, 1987, and granted in open court on that same day. Judgment of dismissal was entered July 2, 1987.

Between the filing of the action and the judgment of dismissal, five years and six months had elapsed.

---

[1] Code of Civil Procedure section 583.310: "An action shall be brought to trial within five years after the action is commenced against the defendant." All further statutory references are to the Code of Civil Procedure.

## Discussion

### The Suspension of Jurisdiction

Section 583.340, subsection (a), provides as follows: "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. . . ."

■ Schwenke argues that the municipal court lost jurisdiction when the cross-complaint for $35,000 was filed June 29, 1982, and that jurisdiction remained suspended until the case was transferred to and refiled in superior court March 14, 1983. If this were so, approximately eight and one-half months would be excluded from the five-year time, and dismissal of the action after five years, six months would have been premature.

Scott contends that the suspension provisions of section 583.340 are not activated by the filing of an *unverified* cross-complaint. Rather the clock should be stopped, if at all, only between the date of the order transferring the cause to the superior court and the date of the actual refiling in that court. Tolling the time for this period, one month and thirteen days, would not change the result here. Nor would it make a difference if the time were tolled from the date of the hearing on the motion to transfer, approximately one month earlier.

The proper application of section 583.340, subdivision (a) in this case depends upon an interpretation of section 396. That section requires a court to suspend further proceedings and transfer a case when it appears that the court lacks jurisdiction: "If an action . . . is commenced in . . . a court which has jurisdiction of the subject matter thereof . . . and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action . . . , or of a cross-complaint, will necessarily involve the determination of questions not within the jurisdiction of the court in which the action . . . is pending, the court, whenever such lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action . . . to a court having jurisdiction thereof . . . ."

Our inquiry focuses upon the narrow question whether a lack of jurisdiction "appears" from the filing of an unverified cross-complaint, such that the court's duty to suspend further proceedings arises at that moment and triggers the exclusion provided in section 583.340, subdivision (a).

First, we turn to a related issue which involves the distinction between a lack of jurisdiction "in the strict sense" and acts in excess of jurisdic-

tion. ■ Our Supreme Court has explained that distinction in the following terms: "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citing situations providing examples.] . . . [¶] But in its ordinary usage the phrase 'lack of jurisdiction' is not limited to these fundamental situations. . . . [I]t may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715], italics deleted.)

■ Schwenke argues that the court is deprived of fundamental jurisdiction in the strict sense where the amount in controversy exceeds the jurisdictional limit. The court thus has no jurisdiction "to try the action" under section 583.340, subdivision (a). Scott, on the other hand, takes the position that the court here retained certain limited powers notwithstanding the cross-complaint for an amount in excess of the jurisdictional limit.

Scott relies principally on *Moore* v. *Powell* (1977) 70 Cal.App.3d 583 [138 Cal.Rptr. 914]. In that case plaintiff's contention on appeal from a judgment of dismissal was that the five-year period was tolled during the pendency of change of venue proceedings. The Court of Appeal agreed that the filing of the motion to change venue operated to suspend the trial court's power to act on any matter other than the motion itself. The court conceded that this effect has been referred to as a "suspension of the trial court's jurisdiction." It refused, however, to apply the tolling provisions of section 583, subdivision (f) (the precursor of section 583.340, subdivision (a)) to toll the time between the filing of the motion and the completed transfer of the action. It did so based in part on its conclusion that the trial court had not lost jurisdiction in the fundamental sense, but rather retained limited powers: for instance, it could hear the motion to transfer, it could then vacate its order granting the change of venue, or it could dismiss for failure to pay fees.

Scott argues via *Moore* that the court in our case likewise retained limited powers: i.e., to hear the motion to transfer, or to hear a demurrer to the cross-complaint or a motion to strike the cross-complaint. Moreover, the court exercised its authority by accepting the filing of an answer to the cross-complaint. Finally, he points out that a subparagraph of section 396 specifically provides for continuing jurisdiction in this case: "In any case where the lack of jurisdiction is due solely to an excess in the amount of the

demand, the excess may be remitted and the action may continue in the court where it is pending."

We do not find *Moore* to be controlling here. ■ First, section 396 plainly speaks of "jurisdiction of the subject matter," providing that the court *"must* suspend *all* further proceedings" when such lack of jurisdiction appears. This language can refer only to jurisdiction "in the strict sense," a construction which is supported by a long line of cases holding that where the amount in controversy exceeds jurisdictional limits, a court has *no* power to act other than to make an order transferring the action to the proper court. (*Brady* v. *Kobey* (1938) 27 Cal.App.2d 505 [81 P.2d 263]; *Kee* v. *Becker* (1942) 54 Cal.App.2d 466 [129 P.2d 159]; *Robertson* v. *Maroevich* (1941) 42 Cal.App.2d 610 [109 P.2d 708]; *Eveleth* v. *American Brass & Iron Foundry* (1962) 203 Cal.App.2d 41 [21 Cal.Rptr. 95].) Our Supreme Court in *Abelleira, supra,* expressed it this way: "A court has no jurisdiction to hear or determine a case where the type of proceeding or the amount in controversy is beyond the jurisdiction defined for that particular court by statute or constitutional provision." (*Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at p. 288.) Where section 396 applies, its provisions for transfer of the cause are mandatory; therefore any other orders relating to parties or pleadings are void. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 322, p. 739.)

The fact that section 396 makes provision for a continuation of the action in the same court if the excess is remitted is not relevant to our proceedings, since no remission occurred here. This provision has been part of the statute since its enactment in 1933. We can therefore assume that the courts listed in the preceding paragraph took it into account in reaching their decisions.

Moreover, the analysis in *Moore* is somewhat flawed in the following respect. The court referred to certain implied exceptions to the five-year statute, which have been established decisionally over the years and fall within the general grouping of situations " 'where it would be impossible, impracticable or futile due to causes beyond a party's control to bring an action to trial . . . .' " (*Moore* v. *Powell, supra,* 70 Cal.App.3d 583 at p. 589, quoting *Crown Coach Corp.* v. *Superior Court* (1972) 8 Cal.3d 540, 546-548 [105 Cal.Rptr. 339, 503 P.2d 1347].) A plaintiff relying upon these exceptions must demonstrate that he used due diligence to expedite his case at every stage of the proceedings. The *Moore* court found that the delay in that case was occasioned in part by plaintiff's failure to pay the transfer fees, and therefore refused to toll the five-year statute. (*Moore* v. *Powell, supra,* 70 Cal.App.3d at p. 590.) ■ Lack of jurisdiction, however, is an express statutory exception to the five-year bar, separate and distinct from exceptions based upon impossibility or impracticability. Where lack of jurisdic-

tion is asserted, plaintiff's diligence, or lack thereof, has no place in the analysis. "[S]ection 583, subdivision (f), does not supply a time limit; nor does it impose upon plaintiff a duty to expedite matters . . . ." (*Herring* v. *Peterson* (1981) 116 Cal.App.3d 608, 616 [172 Cal.Rptr. 240].) "The statute [§ 583, subd. (f)] does not define a duty nor impose an obligation, it merely deals with a defined state of facts and declares the legal consequence that flows therefrom." (*Polony* v. *White* (1974) 43 Cal.App.3d 44, 48 [117 Cal.Rptr. 341].) We discuss the matter of plaintiff's diligence in the next section.

■ Though we agree with Schwenke that the trial court lacks jurisdiction "in the strict sense" where the amount in controversy exceeds jurisdictional limits, the question still remains *when* jurisdiction was "suspended" for purposes of tolling the five-year period. We return to the language of section 396, which imposes a duty upon the court to suspend all further proceedings whenever it *"appears from the verified pleadings, or at trial, or hearing,* that the determination of the action . . . will *necessarily"* involve questions not within the court's jurisdiction. Scott maintains that the underlined language indicates a legislative intent that lack of jurisdiction be determined by a court upon admissible evidence: either a verified pleading, testimony under oath during trial, or a declaration under penalty of perjury at a hearing. Thus the filing of an unverified pleading by itself will not suffice under this statute to compel a court to transfer the action. In our case, since the cross-complaint was unverified, the lack of jurisdiction did not "appear" until the hearing on the motion to transfer; hence the suspension of all further proceedings did not take place until that time.

The trial court apparently accepted this interpretation of the statute, and we find it to be the correct one. If, as Schwenke argues, the presence or absence of a verification does not affect the court's duty to transfer the action under section 396, there would be no purpose whatsoever to the language that pleadings be verified. ■ In interpreting a statute, we must give effect to every word or phrase so that no part is useless or devoid of meaning. (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].)

■ Although Schwenke has cited several cases construing section 396, which speak of a loss of jurisdiction from the time an excessive demand is filed, none considers the issue we face here, namely, a claim in excess of jurisdictional limits being made in an unverified cross-complaint. (*Brady* v. *Kobey, supra,* 27 Cal.App.2d 505; *Kee* v. *Becker, supra,* 54 Cal.App.2d 466; *Robertson* v. *Maroevich, supra,* 42 Cal.App.2d 610; *Eveleth* v. *American Brass & Iron Foundry, supra,* 203 Cal.App.2d 41.) Schwenke points out that it is impossible to tell from the opinions in these cases whether the pleadings

under consideration were verified or not. This is not necessarily so. The language of section 396 requiring lack of jurisdiction to be shown in verified pleadings has been unchanged since 1933. In the absence of any indications to the contrary, we are entitled to assume that courts applying section 396 were aware of this requirement and that the pleadings before them complied in this respect.

Finally, both Schwenke and Scott turn for support to the case of *Wiggins* v. *Washington Nat. Life Ins. Co.* (1966) 246 Cal.App.2d 840 [55 Cal.Rptr. 129]. In that case plaintiff filed an action against an insurer for benefits, and defendant filed a cross-complaint for declaratory relief. At the time plaintiff answered the cross-complaint, he moved to transfer the matter to superior court. The cause was transferred and refiled in superior court, and eventually dismissed upon motion by defendant, over five years after its commencement. Plaintiff argued that the time between the filing of the cross-complaint for declaratory relief and the subsequent refiling of the action in the proper court be tolled for purposes of the dismissal statute. The Court of Appeal observed that "since no further proceedings could be had in this action until the cause had been transferred . . . , it could be argued that plaintiff was unable to bring her case to trial until the transfer was effectuated . . . . Based on this premise the further argument could be made that the period of limitation provided for in section 583 should be tolled during this time, that is, from the filing of defendant's cross-complaint [date omitted] until the filing of the action in the superior court [date omitted]." (*Id.* at p. 848.) After posing the issue, however, the *Wiggins* court declined to address it, since in that case five years had elapsed whether the interim period were excluded or not. Furthermore, we must assume, as we explain above, that the cross-complaint in *Wiggins* was duly verified; consequently, *Wiggins* is not probative of our issue regarding the sufficiency of an unverified pleading under section 396.

### Impossibility, Impracticability, or Futility

Section 583.340 sets forth three conditions which will toll the five-year statute: (a) where jurisdiction was suspended, (b) where there was a stay of proceedings, or (c) where "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile." ■ Schwenke claims that even if we find jurisdiction was not suspended under subsection (a), it was nonetheless impossible for him to prosecute his action following the filing of the cross-complaint until the matter was transferred to the proper court.

Subsection (c) codifies an implied exception to the dismissal statute which has been recognized by the courts over the years. A plaintiff asserting

impossibility as a basis for relief must, however, demonstrate that he used reasonable diligence in prosecuting the action. (*Moran* v. *Superior Court* (1983) 35 Cal.3d 229, 238 [197 Cal.Rptr. 546, 673 P.2d 216].) Schwenke has not made such a showing. It would have been a simple matter for him to move to transfer the action at the time he was served with the cross-complaint. Instead he did nothing, waiting until Scott brought the motion nearly five months later. Moreover, it appears that the case was off calendar for approximately two and one-half years at Schwenke's request. It is clear that Schwenke did not diligently expedite the proceedings. Section 583.340, subdivision (c) does not apply in this case.

The judgment is affirmed.

Agliano, P. J., and Capaccioli, J., concurred.