Filed 6/24/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| PNEUMA INTERNATIONAL, INC., Plaintiff and Appellant, v. YONG KWON CHO et al., Defendants and Respondents. | A151536 (Alameda County Super. Ct. No. HG15756006) |

Appellant Pneuma International, Inc. sued a former employee, a competitor the employee went to work for, and a Pneuma investor, alleging several business torts. The investor filed a cross-complaint against Pneuma and its owner alleging they breached their investor agreement. Following a court trial, the court ruled against Pneuma on all the causes of action it asserted, with the exception of a single cause of action for trespass to chattel; and it ruled in favor of the investor on his cross-complaint. Pneuma challenges the trial court's rulings on some, but not all, causes of action. We affirm. In the published portion of our opinion, we hold that a determination a party engaged in a trespass to chattel in a business context does not, without more, establish that the party engaged in an unlawful business practice under California's Unfair Competition Law. (Bus. & Prof. Code, § 17200, hereafter section 17200 or UCL.)

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B, II.C, II.D.2.b, II.D.3, and II.E.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

Pneuma is a supplier of paper goods to distributors and wholesalers. At least as far back as 2012, the company (then known as Egpak) sold a 10-ounce "ripple soup cup" and matching lid, which was supplied by a Chinese manufacturer and freight company. One of the company's customers for the cups was Heritage Paper, which in turn supplied the soup cups to Kaiser Hospitals.

While respondent Yong Kwon Cho was an employee of Egpak, he set up the website domain www.egpak.com using his personal Yahoo! email address, and became the registered owner of the domain. The website domain was used as a repository of the company's business records, including its financial books, contact information for vendors and customers, and purchase orders. Cho installed various programs on company computers and created email addresses for company employees.

In October 2012, Cho signed a non-disclosure agreement with Mikahel Chang, who was the owner and developer of certain food-container products and who was in the process of purchasing Egpak. The agreement stated that Chang intended to disclose confidential information about the products to Cho. Two days after the agreement was signed, Chang entered into a purchase agreement to acquire Egpak, which then became Pneuma. The purchase agreement included the sale of the www.egpak.com website domain.

In March 2013, respondent Bruce Chalmers entered into an equity/shareholders investment agreement with Pneuma. Under the agreement, Pneuma agreed to sell shares of common stock to Chalmers for $50,000, and the company agreed pay Chalmers periodically based on Chang's monthly salary and the company's profits. Chang personally guaranteed the payment and performance of Pneuma's indebtedness and obligations, but his liability under the guaranty was limited to $50,000 plus interest.

Cho left Pneuma in mid-December 2013 to work for respondent Central United Packaging, Inc. (CUP). He trained another Pneuma employee to take over his position,

but that training was not complete by the time he left the company. After he left Pneuma, Cho remotely accessed the company's computer several times in late December 2013. According to Cho, he did so in response to calls for help from the employee who took over his position.

CUP used the web domain igcpak.com. Heritage Paper switched from Pneuma to CUP to supply its ripple cups. CUP continued to use the same Chinese manufacturer and freight company to supply them with the same 10-ounce soup cup and lid previously provided by Pneuma.

In January 2014 Pneuma demanded Cho's email communications. Cho downloaded all the email from one of his two epak.com email accounts (as opposed to his personal Yahoo! account) onto a USB drive. He and his attorney went to Pneuma's offices to deliver the drive to Chang, but Chang refused to meet with either of them. The USB drive was given to Cho's successor at Pneuma, who gave it to Chang. Chang did not open the drive because he was concerned it might be contaminated, and he instead gave the drive to his attorney.

Chang also demanded that Cho transfer ownership of the egpak.com domain. Pneuma was informed that in order to transfer ownership, Yahoo! required that Pneuma's system be shut down for a period of hours and possibly even an entire weekend. A computer expert for Pneuma informed Chang that there were "certain other risks to having the domain shut down[,] including potential loss of information or data." Chang was unwilling to allow the system to be shut down and also refused the option of backing up Pneuma's emails and other data on the domain in order to mitigate the risks involved with the transfer. Cho was willing to have Pneuma substituted in his place as the registered owner of the egpak.com domain but refused to allow complete access to all of his personal email accounts associated with the domain.

Meanwhile, Chalmers claimed that Chang owed him money for commissions, loan repayment, and investments. The two worked in 2014 to resolve their dispute. An informal mediation led to a tentative agreement, which was memorialized in a memorandum that Chalmers emailed to Chang on May 12. Chalmers wrote in the final

3

paragraph of the memorandum that he would have his attorney "write up the agreement." Chang tried to add or modify terms to the agreement, and Chang's attorney emailed Chalmers a written addendum. Chalmers was "incensed" about the changes.

After further negotiation, the parties reached what Chalmers believed was a new agreement, and on June 25 emailed Chang another memorandum setting forth the terms of the revised agreement. The email memorandum lists nine "terms we both agreed to," and it concludes, "The ball is in your court, no more excuses or delays—this starts Aug 1, 2014." Chalmers printed the email and signed it, along with Barry Willis, a sales manager with Heritage Paper. Chang did not sign the agreement, and Chalmers did not hear a response from Chang. Chang nevertheless later argued, and Chalmers disputed, that the June 24 memorandum represented a valid and enforceable oral settlement agreement.

Pneuma initiated these proceedings in October 2014 against Cho, CUP, and Chalmers. As amended, the complaint stated 15 causes of action, not all of which are implicated in this appeal. We primarily address the following causes of action: violation of California's Comprehensive Computer Data Access and Fraud Act (Pen. Code, § 502) against Cho and CUP (the second cause of action); recovery of personal property against Cho and CUP, later construed by the trial court as trespass to chattel (the fourth cause of action); conversion and misappropriation against Cho and CUP (the fifth cause of action); common law unfair competition and trade name infringement against Cho and CUP (the sixth cause of action); and unfair competition under section 17200 against all respondents (the fifteenth cause of action). Chalmers filed a cross-complaint against Pneuma and Chang for rescission, breach of contract, and other causes of action.

Pneuma's computer expert was tasked with investigating Pneuma's computers in October 2015 after a suspected burglary on Pneuma's premises. The expert discovered that two of Cho's egpak.com email accounts had been deleted from the system. The expert was unable to determine who had deleted the email accounts or when the deletions occurred.

4

A court trial began in April 2016. At the time of trial, Cho remained the registered owner of the egpak.com domain. According to respondents' information-technology expert, the protocol for transferring the domain to Chang or Pneuma had changed and would no longer require the website to shut down.

After Pneuma presented its case, respondents filed a motion for entry of judgment or, in the alternative, adjudication in their favor on each cause of action. (Code Civ. Proc., § 631.8.) The trial court granted the motion in part and denied it in part in a statement of decision filed on July 5, 2016. As relevant to this appeal, the court granted judgment in Chalmers's favor on Pneuma's claim based on the alleged settlement agreement between the two. The court concluded that Pneuma had not established that the June 24, 2014 memorandum Chalmers sent to Chang "represent[ed] anything more than a counter-proposal." The court therefore granted Chalmers's motion for judgment as to the twelfth cause of action, for breach of the implied covenant of good faith and fair dealing. As we discuss below, it is unclear whether Pneuma challenges that ruling in this appeal.

The trial court also ruled in favor of Cho and CUP on Pneuma's sixth cause of action, for unfair competition and trade name infringement. It did so after rejecting Pneuma's argument that the general public or the wholesale food packaging products industry in the Bay Area would necessarily confuse Igcpak or IGCPAK.com (CUP's web domain) with Egpak, Inc. or EGPAK.com (Pneuma's web domain).

The trial continued, and respondents presented their defense to Pneuma's remaining causes of action. In a second statement of decision filed on March 22, 2017, the trial court ruled in favor of Chalmers and CUP on Pneuma's remaining causes of action against them and in favor of Cho on all but one cause of action against him. As relevant to this appeal, and as discussed in more detail below, the trial court concluded that Pneuma had not established all the elements of a claim under the Comprehensive Computer Data Access and Fraud Act (Pen. Code, § 502, the second cause of action). The court further concluded that Pneuma had not established a cause of action for conversion (the fifth cause of action). As for Pneuma's fourth cause of action against

5

Cho, for conversion/recovery of personal property (the egpak.com domain), the trial court relabeled the cause of action as trespass to chattel and entered judgment in Pneuma's favor against Cho. The court directed Cho to transfer the contents of the domain to Pneuma (or its designee), excluding Cho's personal emails that did not constitute Pneuma's business records. Cho did not appeal from the judgment against him. The court further concluded that Pneuma had not established that any of the respondents had committed a violation of section 17200 (the fifteenth cause of action).

Finally, the trial court entered a separate statement of decision on March 22, 2017, addressing Chalmers's cross-complaint against Pneuma and Chang. The court concluded that Pneuma and Chang had breached the terms of the parties' equity/shareholders investment agreement. The court ordered Pneuma to pay Chalmers $219,638.37 in damages and Chang to pay any unsatisfied portion of the judgment, not to exceed $50,000.

Judgment was entered in April 2017, and Pneuma timely appealed. An "amended judgment" was entered in June 2017 awarding respondents attorney fees and costs, which Pneuma does not challenge. Although Pneuma's appellate counsel represented both Chang and Pneuma below, an opening brief was filed on behalf of Pneuma only.

II.
DISCUSSION

*A. Pneuma Established that Cho Committed Trespass to Chattel.*

Before we turn to Pneuma's arguments, we discuss the legal elements for the one cause of action upon which the company prevailed, trespass to chattel, because many of Pneuma's arguments require an understanding of this tort.

"Dubbed by Prosser the 'little brother of conversion,' the tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered.' (Prosser & Keeton, Torts (5th ed. 1984) § 14, pp. 85-86.)" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1350.) "Though not amounting to conversion, the defendant's interference must, to be

6

actionable, have caused some injury to the chattel or to the plaintiff's right in it.  Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately caused injury.'  [Citation.]  In cases of interference with possession of personal property not amounting to conversion, 'the owner has a cause of action for trespass . . . , and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.'  [Citations.]  In modern American law generally, '[t]respass remains as an occasional remedy for minor interferences, resulting in some damage, but not sufficiently serious or sufficiently important to amount to the greater tort' of conversion.  (Prosser & Keeton, Torts, *supra*, § 15, p. 90 . . . .)"  (*Id.* at pp. 1350-1351, italics omitted.)

As we have mentioned, the trial court relabeled Pneuma's fourth cause for conversion/recovery of personal property as one for trespass to chattel and found in favor of Pneuma against Cho (but not CUP).  The court concluded that Pneuma had established the necessary elements of the tort: (1) Pneuma owned, possessed, or had a right to possess the egpak.com domain and its contents; (2) Cho intentionally interfered with Pneuma's use or possession of that property; (3) Pneuma did not consent; (4) Pneuma was harmed; and (5) Cho's conduct was a substantial factor in causing Pneuma's harm.  (CACI No. 2101.)  The court analogized the egpak.com domain to a storage locker:  "The personal property at issue here is not the storage locker, but the *contents* of the storage locker.  In other words, even though the storage locker (here, the egpak.com domain) is arguably 'owned' by Cho, it is undisputed the contents of the storage locker– the business records and email communications associated with the business– are personal property of Pneuma.  By holding the only key to the storage locker, Cho is exercising unauthorized interference over the contents of that locker, to wit, Pneuma's business records.  Among other things, because it is not the 'registered owner' of the domain insofar as Yahoo is concerned, [Pneuma] is unable to prevent Cho (or anyone else) from accessing or viewing its business records and it is even unable to pay the fees necessary to keep the domain up and running.  However, because the interference in this case has not been 'substantial'– as [Pneuma] has generally been able to access its records, it continues to

7

conduct business and Cho has cooperated in keeping the site on line– the court concludes the alleged unconsented interference here does not amount to conversion." The court further concluded that it was immaterial whether Pneuma had established that it suffered monetary damages as a result of the trespass. Pneuma had established the necessary element of "harm" by virtue of "its mere inability to control and protect its personal records from being accessed by defendant, a local competitor in its business. [Pneuma]'s request for equitable relief is therefore merited where, as here, monetary damages (assuming any existed) would be insufficient to compensate for this type of on-going harm."

With these principles and rulings in mind, we turn to Pneuma's specific attacks on the judgment.

### B. Pneuma Did Not Establish a Violation of Penal Code section 502.

Pneuma first argues that the trial court should have found that Cho violated California's Comprehensive Computer Data Access and Fraud Act (Pen. Code, § 502), but we disagree. The Act bars computer-related activity done "[k]nowingly" and "without permission." (Pen. Code, § 502, subd. (c).) The statute lists 14 hacking-related crimes, two of which are relevant here. One prohibits disrupting computer services or causing the denial of computer services (§ 502, subd. (c)(5)), and one prohibits accessing a computer network without permission (*id.*, subd. (c)(7)). People who commit the crimes listed in subdivision (c) are subject to civil liability where a violation causes "damage or loss" (*id.*, subd. (e)).

Pneuma's second amended complaint alleged that Cho refused to "relinquish, transfer and deliver the complete control over" the egpak.com domain. It further alleged that Cho had "disrupted" Pneuma's computer system or "denied" Pneuma's computer services, the conduct prohibited by subdivision (c)(5) of Penal Code section 502. In its written closing statement submitted to the trial court, Pneuma cited that subdivision and argued that the evidence showed that Cho had disrupted Pneuma's computer system. The trial court filed a proposed statement of decision concluding that Cho had not violated the Act, but it focused on subdivision (c)(7), which prohibits the separate act of accessing a

8

computer network without permission. Pneuma filed a short objection to the proposed statement of decision but did raise the trial court's supposed failure to address subdivision (c)(5).[1] The court's final statement of decision again did not mention subdivision (c)(5) and focused exclusively on subdivision (c)(7). The court concluded that there was "no evidence that Cho circumvented technical or code[-]based barriers to use TeamViewer [a program used to remotely access a computer system] to gain access to Pneuma's computer in late December 2013 and [that there was] no evidence that Cho attempted to gain access to the Pneuma system at any other time after he left Pneuma's employment."[2] The court further concluded that in any event, Pneuma failed to establish damages, an "essential element to recovery."

On appeal, Pneuma acknowledges that the company did not establish that Cho violated Penal Code section 502, subdivision (c)(7), but argues that it proved a violation of subdivision (c)(5), which was improperly ignored by the trial court. (See *People v. Childs* (2013) 220 Cal.App.4th 1079, 1101-1102 [access to computer systems is not an element of violation of subd. (c)(5)].) Respondents counter that the trial court was not required to address Pneuma's arguments on subdivision (c)(5) because it is settled that a trial court need not in its statement of decision address all legal and factual issues raised by the parties. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125 [statement of decision "required only to set out ultimate findings rather than evidentiary ones"].) Pneuma acknowledges that a court need not address all evidentiary facts but argues that the court here failed to address an ultimate finding. In making its argument, however, Pneuma overlooks the role forfeiture plays in this context.

---

[1] Neither the February 21, 2017 proposed statement of decision nor Pneuma's March 6, 2017 objection were included in the appellate record. On its own motion, the court takes judicial notice of the documents, which are available on the trial court's website.

[2] The court also concluded that Pneuma failed to establish a violation of the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030), a ruling that Pneuma does not challenge on appeal.

9

When a party requests a statement of decision, the trial court shall explain "the factual and legal basis for its decision as to each of the principal controverted issues at trial." (Code Civ. Proc., § 632.) "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous *and the record shows that the omission or ambiguity was brought to the attention of the trial court . . .* prior to entry of judgment . . . , it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634, italics added.) "It is axiomatic that a party may not complain on appeal of rulings to which it acquiesced in the lower court. [Citation.] ' "[F]orfeiture" is the correct legal term to describe the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court.' [Citation.] It is unfair to the trial judge and the adverse party to attempt to take advantage of an alleged error or omission on appeal when the error or omission could have been, but was not, brought to the attention of the trial court in the first instance." (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912.) "It follows that when a trial court announces a tentative decision, a party who failed to bring any deficiencies or omissions therein to the trial court's attention forfeits the right to raise such defects or omissions on appeal." (*Ibid.* [where cause of action not directly addressed in tentative statement of decision but no objections raised, party forfeits claim].)

Here, Pneuma remained silent about the trial court's lack of analysis of Penal Code section 502, subdivision (c)(5). We may infer from this silence and the conclusions reached by the court that the court decided in favor of respondents. (Code Civ. Proc., § 634.) To show a violation of Penal Code section 502, subdivision (c)(5), Pneuma was required to establish that Cho knowingly and without permission caused the denial or disruption of Pneuma's computer system or computer network. When the trial court rejected this cause of action, it also concluded that Pneuma failed to establish a related violation of the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030, *ante*, fn. 2) because it had not shown that data or information in Pneuma's computer system "was altered, damaged, destroyed or the integrity of the data in the system was otherwise

10

impaired." Such a finding is incompatible with a finding that Cho disrupted Pneuma's computer service under Penal Code section 502, subdivision (c)(5).

In light of the inference that the trial court decided in favor of respondents and the general rule that a judgment is presumed to be correct (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609), we quickly dispose of Pneuma's remaining arguments. The company claims that Cho's conduct in this case in comparable to the defendant in *People v. Childs*, *supra*, 220 Cal.App.4th 1079, but it is mistaken. In *Childs*, the defendant was a network engineer for San Francisco's Department of Telecommunications and Information Services (DTIS) and had sole access to the city's fiber-optic wide area computer network. (*Id.* at pp. 1082-1083, 1088.) After the city notified the defendant that he was being reassigned, the defendant at first refused to provide administrative access to the network and also provided incorrect passwords. (*Id.* at p. 1091.) Because of the defendant's actions, DTIS was locked out of the computer network for nearly two weeks, and the city paid outside consultants $646,000 to evaluate the network. (*Id.* at p. 1093.) A jury convicted the defendant of disrupting the city's computer network and found true an enhancement that the defendant caused loss of property worth more than $200,000 (Pen. Code, § 502, subd. (c)(5), former Pen. Code, § 12022.6, subd. (a)(2)). (*Childs*, at pp. 1094, 1097.) Here, by contrast, the trial court specifically found that "the interference in this case ha[d] not been 'substantial' " because Pneuma had generally been able to access its records, it continued to conduct business, and (unlike the defendant in *Childs*) Cho had cooperated in keeping egpak.com online.

Since Pneuma has not shown show error regarding the trial court's ruling under Penal Code section 502, we need not address its arguments about whether it established damages.

*C. Pneuma Did Not Establish a Cause of Action for Conversion.*

Pneuma next argues that the trial court erred in concluding Pneuma did not establish its fifth cause of action, for conversion, but we again disagree.

" ' " 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to

11

possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.' " ' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.) Pneuma's complaint alleged that Cho and CUP converted the company's "intangible properties of vendor accounts and customer accounts . . . by withholding, using, modifying, delivering, disclosing, transmitting, distributing and/or otherwise interfering with Plaintiff's rights in the customer and vendor lists and email addresses, email contents, and email data." The trial court relied on the traditional rule that conversion does not apply to " 'the unauthorized taking of *intangible* interests that are not merged with, or reflected in, something tangible.' " (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119, italics added.) Because Pneuma specifically alleged that respondents converted *intangible* properties, the trial court reasoned, the company could not prevail on its conversion claim.

Pneuma argues on appeal, correctly, that courts have held that website domains are subject to conversion law in California. (*Kremen v. Cohen* (9th Cir. 2003) 337 F.3d 1024, 1033 [domain name "easily" falls within class of property subject to conversion law in California].) But the company nonetheless fails to establish that the judgment should be set aside on this cause of action. It claims that the trial court committed "plain legal error" by not concluding that the facts underlying the finding of trespass to chattel also established conversion. Not so. The trial court found in connection with its ruling on trespass to chattel that Cho's interference with the website domain was not "substantial." We conclude that this finding is fatal to the cause of action for conversion, because trespass to chattel occurs where, as here, there is only a " 'minor interference[]' " that is " '*not sufficiently serious or sufficiently important* to amount to the greater tort' of conversion." (*Intel Corp. v. Hamidi*, *supra*, 30 Cal.4th at p. 1351, italics added.)

For the most part, Pneuma's arguments to the contrary consist of unsupported legal conclusions, such the company's contention that Cho's "refusal to transfer his private email account was unreasonable." Pneuma also argues that the trial court committed a "grave error" when it failed to address the egpak.com domain name in connection with this cause of action. But, again, because Pneuma failed to raise the issue

12

in its short objection to the trial court's proposed statement of decision, it has forfeited this issue.

The cases upon which Pneuma relies are easily distinguishable, because they involved situations where the defendants wrongfully assumed complete legal control over property. (*Beverly Finance Co. v. American Casualty Co.* (1969) 273 Cal.App.2d 259, 264 [conversion took place when defendant took assignment of a conditional sales contract with a claim of legal title to a vehicle that had been stolen]; *Service v. Trombetta* (1963) 212 Cal.App.2d 313, 314-315, 320-321 [defendants took possession of truck that was not theirs and that was later sold in bankruptcy, depriving plaintiff of more than $4,000]; *Mears v. Crocker First Nat. Bank* (1948) 84 Cal.App.2d 637, 644-645 [defendants alleged to have limited plaintiff's right to dispose of his stock when, where, and how stock owner chose].) And *Zaslow v. Kroenert* (1946) 29 Cal.2d 541, also cited by Pneuma, actually supports affirming the judgment, because it noted that "every failure to deliver is not such a serious interference with the owner's dominion" that it amounts to conversion. (*Id.* at p. 550.) That is the case here. There was no allegation that Cho did anything wrong when he initially created the egpak.com web domain, and the trial court found that Pneuma was still generally able to access its records and continued to conduct business even while Cho remained as the official registered owner of the domain after he left the company. Thus, we cannot agree with Pneuma's contention that the company prevailed on its conversion cause of action as a matter of law.

### D. Pneuma Did Not Establish that Any Respondent Engaged in Unfair Competition.

#### 1. Summary of Law.

The UCL prohibits "unfair competition," defined in section 17200 as "any unlawful, unfair or fraudulent business act or practice." Because the statute "is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices that are unlawful, or unfair, or fraudulent." (*AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 587.) Two of Pneuma's causes of action alleged unfair competition, which we address separately.

13

## 2. Pneuma Did Not Establish that Cho Violated the UCL.

### a. A Trespass to Chattel, Without More, Does Not Satisfy the UCL's "Unlawful" Prong.

Pneuma's fifteenth cause of action alleged that the three respondents "violate[d] state statutes and regulations, and state common law, each of which constitute[d] an independent and separate violation of" section 17200. Stated differently, the company contended that this conduct implicated the "unlawful" prong of section 17200. The trial court concluded that because Pneuma had not established any cause of action against Chalmers or CUP, the company likewise had not established they committed an unlawful, unfair, or fraudulent business act (the fifteenth cause of action).

As for Cho, the trial court concluded that although his failure to transfer ownership of the egpak.com domain to Pneuma amounted to trespass to chattel, the conduct did not amount to a fraudulent or unfair business practice within the meaning of section 17200. On appeal, Pneuma contends that because it prevailed on a cause of action for trespass to chattel, it necessarily follows that it also should have prevailed on its cause of action for unfair competition under section 17200. We disagree.

"By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838-839.)

Pneuma acknowledges that there appears to be no caselaw finding a violation of the UCL based on trespass to chattel (which is not surprising given the dearth of modern authority on the tort). It argues, however, that because California courts have historically interpreted the unlawfulness prong of UCL broadly, there is no reason not to "borrow" this common law tort to find a violation. True, the scope of the UCL is broad. (E.g., *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.) "Since the addition of the word

14

'unlawful' to the predecessor statute in 1963, [section 17200] has been liberally construed so as not to be limited to traditional anticompetitive practices." (*People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 318-319.) The Legislature intended the sweeping language of the statute to include anything that is properly characterized as a business practice and that also is forbidden by law. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266.) The key principle for our purposes is that the practice actually be forbidden by a specific law. "In drafting the [UCL], the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity." (*Id.* at pp. 1266-1267.) Here, however, Pneuma does no more than identify a non-criminal tort upon which it prevailed and argue that this was also a basis for a UCL violation, as opposed to "borrowing" a specific law.

The cases upon which Pneuma relies do not advance its argument. The plaintiffs in *Bondanza v. Peninsula Hospital & Medical Center* (1979) 23 Cal.3d 260, 265-266, relied on former provisions of the Civil Code for the "unlawful" prong of section 17200, and the plaintiffs in *Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 367, based their section 17200 claim on Labor Code section 2802. *Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1008, did not involve section 17200's "unlawful" prong but instead was based on the "unfair" prong. Because Pneuma does not address why its trespass to chattel cause of action was actionable under the "unfair" or "fraudulent" prongs of the UCL, we need not consider the issue.

Although not directly relevant to whether Pneuma may "borrow" a tort as a basis for a UCL cause of action, respondents correctly observe that Pneuma may not recover damages under a UCL cause of action because remedies under the act are purely equitable in nature. (E.g., *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150-1151 [remedies provided under UCL "are limited" and "it is well established that individuals may not recover damages"].) Pneuma does not identify what additional relief it would be entitled to if it prevailed on its UCL cause of action. The trial court already ordered the equitable relief of transferring the egpak.com website to Pneuma after it prevailed on a cause of action for trespass to chattel. We conclude that the trial court

15

did not err in declining to base a UCL cause of action on the common-law tort of trespass to chattel under these circumstances.

                      b.  Pneuma Did Not Otherwise Establish that Cho Engaged in Unfair Competition.

In section titled "<u>Unfair Competition by Former Employee</u>," Pneuma argues, "In addition to satisfying itself with the unlawfulness-prong, the Trial Court had additional findings to hold that CHO was also engaged in an unfair competition with PNEUMA. The Trial Court found that CHO essentially ran the entire operations of PNEUMA while employed there."  The company then quotes from two separate statements of decision: first, an excerpt from the July 2016 statement of decision finding that Chalmers did not aid and abet Cho and CUP; and second, an excerpt from a March 2017 statement of decision regarding the trespass to chattel cause of action.  Relying primarily on *Whitted v. Williams* (1964) 226 Cal.App.2d 52, regarding the wrongful disclosure of trade secrets, Pneuma argues that it "met the 'unfairness' and 'unlawfulness' prong of its UCL Claim against CHO" and that "the Trial Court's holding against PNEUMA's UCL Claim against CHO must be reversed."  But Pneuma relies on *Whitted* to challenge the trial court's finding in connection with a separate cause of action—intentional interference with prospective economic advantage—that "defendants Cho and CUP were free to compete with Pneuma for the Kaiser cup business."  In so doing, Pneuma does not address any of the evidence favorable to the judgment and instead recites a series of legal conclusions that are untethered to the trial court's actual findings.  Pneuma again fails to demonstrate error.

           3.  Pneuma Failed to Establish Tradename Infringement.

Pneuma next claims that it also established its cause of action for unfair competition and trade name infringement (the sixth cause of action) against CUP as a matter of law.  We disagree.

The gravamen of Pneuma's cause of action was that by using the trade name "Igcpack" and providing substantially similar products, CUP was using a business name that was likely to be confused with Pneuma's trade name "Egpak," which amounted to

unfair competition. To prevail on this cause of action, Pneuma was first required to show that the Egpak tradename had acquired a "secondary meaning." (*Ball v. American Trial Lawyers Assn.* (1971) 14 Cal.App.3d 289, 302.) The phrase "secondary meaning" means " 'a subsequent significance added to the previous meaning of the designation and becoming in the market place its usual and primary significance. . . . The issue . . . is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association.' (Rest., Torts, § 716, com. b.)" (*Ibid.*)[3] To amount to unfair competition, Pneuma had to show that members of the public were likely to be deceived but was not required to prove that anyone was actually misled. (*Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at p. 1267; *Brockey v. Moore*, *supra*, 107 Cal.App.4th at p. 99.) "While the scope of review in an 'unfair competition' case is governed by the normal rules on appeal, including that which precludes reexamination of facts found by the trial court on conflicting evidence, these rules do not preclude the appellate court from ascertaining whether the proper rules were applied in reaching those findings of fact. [Citation.] Nor do those rules bar the appellate court's inquiry as to . . . whether findings are supported by the evidence." (*Ball*, at pp. 305-306.)

The trial court found in respondents' favor after Pneuma rested (Code Civ. Proc., § 631.8) because it concluded that there was no evidence that the trade name Egpak, Inc. or Egpak.com had obtained a secondary meaning. The court further concluded that "[t]here is no evidence that the general public or specifically, the wholesale food packaging products industry in the Bay Area, would necessarily confuse Igcpak or IGCPAK.COM with Egpak, Inc. or EGPAK.COM, despite the similar sounding names.

---

[3] *Ball* was decided under former Civil Code section 3369, but "[t]here is no indication the current version of the UCL was meant to depart from the[] rules" set forth in the case. (*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 100.) And although Pneuma's sixth cause of action appears to have been for common law as opposed to statutory unfair competition, we find section 17200 caselaw helpful in this context.

While it is true that both companies are in the same business of supplying disposable food packaging items and are direct competitors, none of the industry witnesses called by the parties have testified that they were confused or misled into thinking that Igcpak.com was the same company as Egpak.com or that they believed Igcpak.com or CUP was associated with Egpak." On appeal, Pneuma claims that the trial court "misapplied the law" because it found that Pneuma was required to show "actual proof of confusion," but this is a misreading of the trial court's statement of decision. True enough, "proof of actual deception or of confusion is not required; protection is afforded against just the probability or likelihood of deception or confusion." (*Ball v. American Trial Lawyers Assn.*, *supra*, 14 Cal.App.3d at p. 310.) But the trial court clearly understood this principle, as demonstrated by its reliance on *Sunset House Distributing Corp. v. Coffee Dan's, Inc.* (1966) 240 Cal.App.2d 748 (*Sunset House*). As set forth in *Sunset House*, which held that the plaintiff had alleged insufficient facts to state a cause of action, "[T]he basic fact on which relief is granted is the confusion in the minds of reasonable members of the general public from which an attribution of affiliation results. [¶] Where the parties engage in the same business in the same locality, the possibility of confusion is so obvious that only these facts need be alleged." (*Id.* at p. 753.) The trial court quoted this passage, along with the passage stating that "a case of unfair competition rests on a confusion, or likelihood of confusion, on the part of the public as a whole, acting as reasonable persons; it cannot rest on the fact that isolated individuals, whose capacity for discrimination is unknown, may have been momentarily confused. [Citations.] . . . We are not told how many persons were so confused, or anything to indicate that they were, in any way, representative of the public as a whole. More is needed." (*Id.* at p. 756, fn. omitted.) By quoting these passages, the trial court recognized that a plaintiff may prevail where there is only a *likelihood* of confusion (*ibid*.), as opposed to actual confusion.

What the trial court found, however, was that whereas *Sunset House* was in the pleading stage and plaintiff was allowed to amend its complaint with additional allegations about possible confusion (*Sunset House*, *supra*, 240 Cal.App.2d at p. 756),

18

here Pneuma had failed *at trial* to show either that EGPAK.COM had "obtained a secondary meaning" or that the general public "*would necessarily confuse*" (as opposed to had actually confused) the name with IGCPAK.COM. (Italics added.) And although Pneuma was not required to show that anyone was actually confused, such evidence would have been relevant, but was not provided. (E.g., *Brockey v. Moore*, *supra*, 107 Cal.App.4th at pp. 99-100; *Ball v. American Trial Lawyers Assn.*, *supra*, 14 Cal.App.3d at p. 309.)

On appeal, Pneuma does not point to any evidence contradicting the trial court's conclusion. It simply argues that the court was compelled as a matter of law to find tradename infringement after it noted that Egpak and Igcpak sound similar, that the two business are in the same business, and that they were direct competitors. Not so. The trial court would only have been compelled to do so if the comparison of the two relevant names themselves was adequate to establish the likelihood of confusion. (*Brockey v. Moore*, *supra*, 107 Cal.App.4th at p. 100; *Ball v. American Trial Lawyers Assn.*, *supra*, 14 Cal.App.3d at pp. 308-309.) We agree with the trial court that they were not. We thus need not address Pneuma's brief arguments about the damages it allegedly suffered because of trademark infringement.[4]

*E. Pneuma Fails to Demonstrate Error in the Trial Court's Rulings on Causes of Action Related to Chalmers.*

Pneuma alleged five causes of action against Chalmers alone (in addition to the cause of action for unfair competition in violation of the UCL, which we already have rejected): for aiding and abetting, joint liability, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, and intentional interference with prospective economic advantage. The only claim that survived after Pneuma presented its case was the company's cause of action for intentional interference with prospective

---

[4] Pneuma also briefly argues that there was an unfair business practice under the UCL based on its cause of action for unfair competition and tradename infringement. Because we disagree that Pneuma established a cause of action for tradename infringement, we reject this argument as well.

economic advantage (the fourteenth cause of action). The trial court later rejected that cause of action at the close of trial. Finally, Chalmers prevailed on his cross-complaint against Pneuma and Chang, finding that they had breached agreements with him. In short, the trial court found in favor of Chalmers on five causes of action brought against him and on the cause of action he brought against Pneuma and Chang.

On appeal, Pneuma argues generally that the trial court erred with respect to the causes of action related to Chalmers. Specifically, the company argues that the court "erred in refusing to hold the oral settlement agreement to be valid." But although Pneuma argues at length that there was no requirement that the parties' oral settlement agreement be in writing, the company fails to tie that argument to any specific cause of action, either in its complaint or in Chalmers's cross-complaint. So even if this court were to agree with Pneuma that "[t]here is no requirement that an oral settlement agreement be in writing per se" and that the trial court should have enforced the "valid oral settlement agreement," it is unclear from these arguments which causes of action would be affected, and why.

Partway through Pneuma's lengthy argument, it indicates specific challenges to the trial court's findings on Chalmers's cause of action for breach of contract. It claims that Chalmers sued for a breach of the parties' equity/shareholders investment agreement and that the trial court erred by rejecting the argument that the parties' oral settlement agreement "effectively modified and waived" Chalmers's rights under the equity agreement. But it argues only briefly that the "plain evidences" were that the parties modified their original agreement under its terms, without explaining which terms of the original agreement were affected by the purported settlement agreement. Pneuma later argues, without citation to the record or legal authority, that the investment agreement was "superseded by the oral settlement agreement, of if not [*sic*], at least was entirely modified by the June 2014 memorandum signed by CHALMERS. Under either situation, PNEUMA had no reason to be sued by CHALMERS. As June, 2014 [*sic*] CHALMERS' memo made it explicit [*sic*], PNEUMA had until after the '30-month pay off period' to

20

pay off any and all remaining debts owed to CHALMERS, which had not expired until after the end of the trial."

Compounding these deficient arguments is that long sections of the opening brief regarding Chalmers contain only legal conclusions, without citations to the record. Pneuma argues, for example, that "the Trial Court erroneously misses the point of the June 24, 2014 memorandum. The memorandum is not in and of itself the settlement agreement. The settlement agreement is the oral settlement agreement that the June 24, 2014 memorandum only subsequently chronicled. See for instance, the June 24, 2014 memorandum, where CHALMERS chronicled the oral settlement agreement in **past tense**, 'These are the terms we both agreed to' (right before he listed bullet points 1 through 9. The June 24, 2014 memorandum was only a written memo that CHALMERS wrote that ended up proving that there was an oral settlement agreement presumably some days before the date of the June 24, 2014 memorandum. Thus, the Trial Court's comment on the character of the June 24, 2014 memorandum was irrelevant. The parties had already entered into the oral settlement agreement." We understand that Pneuma is referring to the June 25, 2014 memorandum that the trial court summarized in its statement of decision entering judgment in favor of Chalmers on four causes of action after Pneuma rested. But Pneuma does not provide citations to any evidence that would support the assertions Pneuma makes about its characterization of that agreement.

We thus agree with respondents that we may disregard Pneuma's arguments regarding Chalmers. (E.g., *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287 [in order to demonstrate error, appellant must provide "some cogent argument supported by legal analysis and citation to the record"]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [court may disregard conclusory arguments that are unsupported by pertinent legal authority or fail to disclose reasoning by which appellant reaches conclusions he or she wants us to adopt].) Pneuma fails to demonstrate error.

21

### III.
### DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.

*Pneuma International, Inc. v. Cho et al.*  A151536

23

Trial Court:

       Superior Court of the County of Alameda


Trial Judge:

       Hon. Jo-Lynne Q. Lee


Counsel for Plaintiff and Appellant:

       Brian H. Song, Song &Lee LLP


Counsel for Defendant and Respondent:

       Stephen M. Fuerch, Law Offices of Stephen M. Fuerch

*Pneuma International, Inc. v. Cho et al.* A151536